T. T. RUDOLPH AND E. L. RUDOLPH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4570, 4571. Promulgated February 19, 1927.

Where the assets of a corporation were distributed to the stockholders as partners, gain or loss resulted to the stockholders under the Revenue Act of 1918, though the liquidation was effected while

article 1566(c), Regulations 45, construing such distribution not to result in gain or loss to stockholders, was in force. The fair market value of the corporate assets distributed determined.

*M. A. Matlock, Esq.*, for the petitioners.
*Thomas P. Dudley Jr., Esq.*, for the respondent.

These proceedings result from the determination by the respondent of deficiencies for 1919 and 1920 in income taxes of T. T. Rudolph, in the amounts of $1,487.30 and $28.99, respectively; and of deficiencies in income taxes of E. L. Rudolph in the amounts of $1,221.57 for 1919 and $4.36 for 1920. Only the deficiencies for the year 1919 are involved in these proceedings and they are based upon gains which respondent determined to have resulted from the liquidation of a corporation in which the petitioners were the principal stockholders. The appeals were consolidated for hearing and decision. The petitioners contend that, as the liquidation was a distribution in kind to the principal stockholders as copartners, there was no gain or loss to them under article 1566(c) of Regulations 45, which was in force at the liquidation date. Petitioners also contend that, if the gain or loss be recognized, the book value used by the respondent in computing gain does not represent the fair market value of the assets distributed.

### FINDINGS OF FACT.

The petitioners are individuals, residing at Arkadelphia, Ark. Prior to May 31, 1919, T. T. Rudolph owned 78 shares and E. L. Rudolph owned 68 shares of an Arkansas corporation known as the Arkadelphia Hardware Co., which had been engaged in carrying on a retail hardware business at that place since its organization in 1907. Their total stock holdings represented all the outstanding stock of 150 shares, par value of $100 per share, except 4 shares held by I. P. Rudolph to qualify the latter as an officer. On May 31, 1919, the corporate charter was surrendered and the assets of the corporation were transferred to T. T. Rudolph and E. L. Rudolph, as copartners, their partnership interests being eight-fifteenths and seven-fifteenths, respectively. The partnership assumed the obligations of the corporation and continued to carry on the business as a partnership under the same name. The partnership books were kept in the same way as were those of the corporate predecessor. No changes were made in the books at the time of the reorganization.

The merchandise carried in the business was not inventoried at the date of the reorganization. The last inventory made prior to that date was the closing inventory taken at cost as of December 31, 1918. The balance sheet as of the close of the year 1918, follows:

| | Books. | As changed by agent's report. |
|---|---|---|
| **ASSETS.** | | |
| Cash | $1,384.74 | $1,384.74 |
| War savings stamps | 836.25 | 836.25 |
| Merchandise | 64,046.06 | 63,131.65 |
| Accounts receivable | 31,759.25 | 31,759.25 |
| Notes receivable | 8,622.63 | 8,622.63 |
| Over and short | 246.90 | |
| Fixtures | 1,792.88 | 2,150.24 |
| Auto | | 953.22 |
| Total | 108,688.71 | 108,837.98 |
| **LIABILITIES.** | | |
| Federal income tax | | 135.30 |
| Accounts payable | 46,793.80 | 46,793.80 |
| Bank overdraft | 1,882.96 | 1,882.96 |
| Notes payable | 18,008.11 | 18,008.11 |
| Suspense | 1,074.39 | |
| Capital stock | 15,000.00 | 15,000.00 |
| Surplus | 5,901.53 | 25,517.17 |
| Loss and gain | 9,457.16 | |
| Undivided profits | 9,118.79 | |
| Reserve account | 1,451.97 | |
| Reserve for depreciation | | 1,500.64 |
| Total | 108,688.71 | 108,837.98 |

On May 31, 1919, the date of the liquidation in question, the books were not formally closed, but a balance sheet as of that date states the condition of the business to be as follows:

| | Books. | As changed by agent's report. |
|---|---|---|
| **ASSETS.** | | |
| Cash | $1,746.41 | $1,746.41 |
| Liberty bonds | 100.00 | 100.00 |
| War savings stamps | 836.25 | 836.25 |
| Accounts receivable | 32,934.17 | 32,934.17 |
| Notes receivable | 12,976.84 | 12,976.84 |
| Fixtures | 1,792.88 | 2,288.24 |
| Merchandise | 49,566.62 | 49,566.62 |
| Auto | | 953.22 |
| Total | 99,953.17 | 101,401.75 |
| **LIABILITIES.** | | |
| Federal income tax | | 616.11 |
| Accounts payable | 35,013.68 | 35,013.68 |
| Notes payable | 19,246.71 | 19,246.71 |
| Bank overdraft | 788.05 | 788.05 |
| Capital stock | 15,000.00 | 15,000.00 |
| Surplus | 5,901.53 | 29,044.21 |
| Reserve account | 1,451.97 | |
| Undivided profits | 19,488.06 | |
| Suspense account | 1,451.97 | |
| Reserve for taxes | 1,915.96 | |
| Reserve for depreciation | | 1,692.99 |
| | 99,953.17 | 101,401.75 |

The stock of goods, as shown by the above inventories, was considerably in excess of the stock usually carried. The unusual stock was due largely to the prompt shipment, after the close of the war, of advance orders placed during the war period for more merchandise than was needed, in the hope of securing delivery of the amounts

desired. The unexpected prompt shipment of stock ordered resulted in an oversupply of stock, especially as concerned farm implements. It was the consistent practice to inventory at cost, irrespective of shelf-worn or obsolete stock. A substantial amount of merchandise was of the latter kind, due to the accumulation over a number of years. The fair market value of the merchandise on May 31, 1919, was 75 per cent of the cost of such merchandise as fixed by the inventory taken by petitioner as of that date.

The accounts and notes receivable in the amounts of $32,934.17 and $12,946.54, respectively, represented an accumulation over a number of years. The notes were secured only by a vendor's lien upon the goods sold. Accounts and notes were charged off the books as worthless by the corporation only when all possible hope of recovery had passed. The amounts charged off from 1914 to 1918, inclusive, were $2,900 in 1914, none in 1915 and 1916, $962 in 1917, and $2,097 in 1918. At the time of the liquidation, the petitioners realized that many of the obligations on the books were outlawed and a large percentage was uncollectible. Five thousand eight hundred and ninety-nine dollars and ten cents of the accounts receivable and $8,275.18 of the notes receivable, transferred from the corporation to the petitioners, have never been collected. The fair market value of the notes and accounts receivable was 60 per cent of their book value at the date of liquidation.

The only dividend paid by the corporation, from 1914 to 1919, inclusive, was a $6,000 dividend paid in 1916. During those years, T. T. Rudolph devoted all his time to the corporation's business and drew a salary varying in amount from $1,500 in the years 1914 to 1916, to $2,775 in 1918. The salary paid E. L. Rudolph for part-time services increased from $1,200 in the years 1914 to 1917, to $1,875 in 1918. The corporation had insufficient credit to obtain loans in amounts necessary to finance its operations. Petitioners were at times required to use their personal credit and secure outside indorsements to obtain needed loans and to offer as collateral their stock in the corporation having a par value greatly in excess of the amount of the loans requested.

In computing the gain or loss resulting to petitioners from the liquidation of the corporation on May 31, 1919, the respondent used the book value of the assets as shown on the books of the corporation, as representing the fair market value of the assets distributed to the petitioners in exchange for their stock.

OPINION.

MILLIKEN: We are here concerned with the gain resulting from the admitted liquidation of a corporation, and the controversy in the computation of the gain relates only to the fair market value of

the assets received by petitioners in exchange for their stock in the corporation.

Counsel for the petitioners contend that, inasmuch as the liquidation was effected by exchanging stock of the petitioners for the assets of the corporation, there resulted a nontaxable distribution pursuant to the provisions of article 1566(c) of Regulations 45, promulgated April 17, 1919, by the respondent, and, inasmuch as the liquidation in question occurred at the time when the regulations of the respondent classified the distribution as nontaxable, the petitioners should not and can not be taxed pursuant to a changed interpretation as reflected in Treasury Decision No. 2924, September 26, 1919, wherein the provisions of article 1566(c) of Regulations 45, promulgated April 17, 1919, were revoked. The contention does not merit extended discussion. The Commissioner can not make or change the law by regulations and a regulation at variance with the import of the statute is of no effect. *Appeal of William E. Scripps*, 1 B. T. A. 491.

We have heretofore considered the status of a distribution such as is represented in the case at bar, and held that the exchange resulted in the realization of gain or loss and is governed by the provisions of section 201(c) of the Revenue Act of 1918. *Appeal of E. C. Huffman*, 1 B. T. A. 52; *Appeal of F. D. Keim*, 4 B. T. A. 1240.

The petitioners aver that the respondent erred in using the book value of the assets of the corporation as evidencing the fair market value of such assets received by them. Error is alleged as concerns the value of the inventory accounts and accounts receivable on May 31, 1919. The evidence adduced at the trial of these cases convinces us that the fair market value of the inventory was only 75 per cent of the book value thereof on May 31, 1919, and the fair market value of the accounts and notes receivable was 60 per cent of their book value as of the date of dissolution, and the deficiencies in question will be recomputed accordingly.

*Judgment will be entered on 15 days' notice, under Rule 50.*