ALICE M. HASTINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

O. B. HASTINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAUD HASTINGS HANSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEILA H. REED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5106, 5107, 5109, 5110.   Promulgated October 10, 1927.

1. When a corporation liquidates and its assets are taken over by its stockholders, who conduct the business as a partnership, the transaction is controlled by section 201(c) of the Revenue Act of 1918.

2. The dissolution of a corporation, and the transferring of its assets to a partnership, composed of the stockholders, who have the same proportionate interest in the partnership as they had in the corporation, may result in gain to the stockholders notwithstanding the fact that they took nothing out of the business.

3. Fair market value of certain assets at date of dissolution of a corporation determined.

*Bernard Greensfelder, Esq.,* for the petitioners.
*Thomas P. Dudley, Esq.,* for the respondent.

These proceedings were consolidated for hearing and decision.

In the case of Alice M. Hastings, the Commissioner determined a deficiency of $6,326.37 for 1920. In the case of O. B. Hastings, he determined a deficiency of $7,586.36 for 1920. In the case of Maud Hastings Hanson, he determined a deficiency of $6,351.88 for 1920. In the case of Leila H. Reed, he determined a deficiency of $6,513.88 for 1920.

The petitioners claim the Commissioner erred in holding that they realized a gain upon the dissolution of a corporation, in which they owned all the stock, and the transfer of the entire assets of the corporation to a partnership, in which they owned the same proportionate interest as they had held in the corporation. Petitioners further claim that the Commissioner erred in his determination of the fair market value of the corporate assets on date of dissolution, March 31, 1920.

### FINDINGS OF FACT.

Alice M. Hastings, O. B. Hastings, and Leila H. Reed are residents of Cairo, Ill. Maud Hastings Hanson is a resident of Rosiclare, Ill.

Samuel Hastings, the father of the above-named petitioners, was engaged in the grain and elevator business in Cairo, Ill., from 1885 until his death in 1905.

In 1906, his widow, Mrs. A. S. Hastings, and four children, petitioners herein, organized the Samuel Hastings Co., an Illinois corporation, to carry on the business formerly conducted by him. The widow and each of the children owned one-fifth of the capital stock of the corporation. On March 31, 1920, the Samuel Hastings Co., Inc., was dissolved and its entire assets taken over by a partnership, composed solely of its stockholders, heretofore named, each former stockholder acquiring the same proportionate interest in the partnership as had been held in the corporation, which was an undivided one-fifth interest. Mrs. A. S. Hastings died on October 10, 1920.

The articles of copartnership, dated April 1, 1920, extended over a period of five years. O. B. Hastings was made sole manager of the partnership and given power to direct and control its policies. In addition to sharing in the profits, he was to receive such salary as manager as might be agreed upon by his copartners. None of the other partners was required to give any time or attention to the business. It was provided in articles of agreement that the death of any partner should not dissolve the partnership, but that the interest of such deceased partner should continue to be bound by the articles of partnership during the five-year period, unless the other partners should consent to a withdrawal of such interests.

The corporation's final statement as shown by its books on March 31, 1920, the date of the dissolution, was as follows:

RESOURCES

Capital assets:

| | |
|---|---|
| Office and fixtures | $5,628.00 |
| Elevator and equipment | 132,664.49 |
| Hackler House and equipment | 2,250.00 |
| Warehouse No. 1 | 6,767.90 |
| Warehouse No. 2 | 4,200.00 |

Capital assets—Continued.

| | | |
|---|---:|---:|
| Warehouse No. 3 | $2,002.65 | |
| Warehouse No. 4 | 1,149.65 | |
| Warehouse No. 5 | 840.08 | |
| Warehouse No. 6 | 895.80 | |
| Warehouse No. 7 | 1,922.91 | |
| Warehouse No. 8 | 1,000.00 | |
| Crib and scales, Gale, Ill | 275.00 | |
| Delivery equipment | 450.00 | |
| Miscellaneous equipment | 1,174.57 | |
| | | $161,221.05 |
| Less depreciation | | 21,026.73 |
| Present value of equipment | | 140,194.32 |

Trading assets:

| | | |
|---|---:|---:|
| Inventory of merchandise | 125,340.60 | |
| Inventory of bags | 6,738.00 | |
| Inventory of sulphur | 81.75 | |
| | | 132,160.35 |

Current assets:

| | | |
|---|---:|---:|
| Cash in drawer | | 112.20 |
| First Bank & Trust Co | | 81,170.18 |
| War savings stamps | | 750.60 |
| Cairo Real Estate Improvement Co | | 1,000.00 |
| Accounts receivable | 171,084.16 | |
| Less reserve for bad account | 3,059.37 | |
| | | 168,024.79 |
| Notes receivable | | 3,394.53 |
| Advances to shippers | | 59,191.50 |
| Overdrafts due from shippers | | 2,469.67 |
| Total assets | | 588,468.14 |

### LIABILITIES

| | | |
|---|---:|---:|
| Accounts payable | $6,093.83 | |
| A. S. Hastings | 9,058.67 | |
| O. B. Hastings | 6,898.06 | |
| A. M. Hanson | 6,500.76 | |
| L. M. Reed | 5,041.20 | |
| M. A. Hastings | 2,081.79 | |
| W. L. Duncan | 56,585.45 | |
| H. L. Mowery | 2,384.87 | |
| J. W. Allen | 1,193.68 | |
| Freight unpaid | 1,033.09 | |
| Selling brokerage | 801.27 | |
| Labor | 149.75 | |
| Taxes | 2,233.15 | |
| Total liabilities | | 100,055.57 |
| Firm's present worth | | 488,412.57 |
| Capital and surplus | 200,000.00 | |
| Reserve for income and excess-profits tax | 47,805.68 | |
| | | 247,805.68 |
| Undivided profits | | 240,606.89 |

The items of property, the fair market value of which is here in controversy, which were carried into the opening balance sheet of the partnership at the same figure as shown in the final statement of the corporation, are as follows:

Physical properties:

| | | |
|---|---:|---:|
| Office and fixtures | $5, 628. 00 | |
| Elevator equipment | 132, 664. 49 | |
| Hackler House and equipment | 2, 250. 00 | |
| Warehouse No. 1 | 6, 767. 90 | |
| Warehouse No. 2 | 4, 200. 00 | |
| Warehouse No. 3 | 2, 002. 65 | |
| Warehouse No. 4 | 1, 149. 65 | |
| Warehouse No. 5 | 840. 08 | |
| Warehouse No. 6 | 895. 80 | |
| Warehouse No. 7 | 1, 922. 91 | |
| Warehouse No. 8 | 1, 000. 00 | |
| Warehouse No. 9 | 275. 00 | |
| Delivery equipment | 450. 00 | |
| Miscellaneous equipment | 1, 174. 57 | |
| | | $161, 221. 05 |
| Inventory: | | |
| Inventory of merchandise | 125, 340. 60 | |
| Inventory of bags | 6, 738. 00 | |
| Inventory of sulphur | 81. 75 | |
| | | 132, 160. 35 |
| Accounts receivable | | 171, 084. 16 |

The Commissioner used the above book values in determining the liquidating dividend to the petitioners. Petitioners claim that the physical properties above mentioned have a book value of $161,221.05, less a reserve for depreciation of $31,010.79, leaving a net book value of $130,210.26 and a fair market value on March 31, 1920, of $100,000; that the inventory of a book value of $132,160.35 had a fair market value of $112,336.30; that the accounts receivable totaling $171,084.16 face value had a fair market value on March 31, 1920, of $162,529.95, resulting in a difference between the values as used by the Commissioner and the values claimed by the petitioners of $58,588.52.

The fair market value of the physical properties above mentioned on March 31, 1920, was $100,000.

The fair market value of the inventory on the same date was $132,160.35.

The fair market value on March 31, 1920, of the accounts receivable was $162,529.95, or 5 per cent less than face value as carried on the books.

OPINION.

LITTLETON: Petitioners claim, first, that there was no gain to them upon the dissolution of the corporation and the transfer of its assets to, and the assumption of its liabilities by, a partnership composed

of the former corporate stockholders, and, secondly, that if the Board should determine that there was a gain, the fair market value of certain of the assets was less than the amount shown by the books and as used by the Commissioner.

As to the first issue, the Board adheres to its previous decisions that upon the dissolution and liquidation of a corporation and the transfer of the corporate assets to a partnership composed of the stockholders, such stockholders must be regarded as having received their share of the assets with whatever gain or loss their receipt entailed. *Appeal of E. C. Huffman*, 1 B. T. A. 52; *Appeal of D. F. Buchmiller*, 1 B. T. A. 380; *Appeal of F. D. Keim*, 4 B. T. A. 1240; *Langstaff v. Lucas*, 9 Fed. (2d) 691; affd. in 13 Fed. (2d) 1022.

The accounts of the corporation were carried to the partnership books without change and the Commissioner in determining the net income of the partnership for the remainder of the year, April 1 to December 31, 1920, used the same figures.

Several witnesses who were familiar with the business and conditions surrounding the same, testified in detail as to the fair market value of the physical properties in question and, from a consideration of all of the evidence, the Board is of the opinion that the fair market value of the physical properties mentioned on March 31, 1920, was $100,000, as claimed by the petitioners.

As regards the value of the grain and hay inventory, there is some testimony to the effect that the fair market value of this inventory on March 31, 1920, was 15 per cent less than the value as shown on the books, or $112,336.30. In the opinion of the Board, however, the Commissioner was not in error in holding that the fair market value of the inventory was $132,160.35. This value appears to be supported by the market prices of the commodities as they existed on March 31, 1920. The market prices for hay and grain were then on an advance and so continued for about three months thereafter. The book values of the inventory were considered the same as the then prevailing market prices and were so fixed by O. B. Hastings, one of the petitioners herein. The market prices for such commodities did not, according to his testimony, become any lower until some time in June, 1920. The claim for a reduction in the value of the inventory is predicated upon the fact that the germinating season includes March and April; that losses are likely to be sustained upon the corn shipments in this period and that the entire merchandise inventory should, therefore, be reduced 15 per cent. There is nothing to show that this fact was not considered in fixing the value of the merchandise inventory at the figure of $132,160.35. However, there is no evidence of the amount of the corn inventory upon which the reduction in value is claimed. Certainly, there was no justification

for reducing the inventory of hay below the then established market price. From a consideration of all of the evidence on this point, there appears no good reason for allowing the reduction claimed in this instance, and the Commissioner's determination of a value of $132,160.35 for the hay and grain inventory is approved.

The accounts receivable, amounting to $171,084.16, were carried on the books at face value. The evidence submitted by petitioners warrants the conclusion that the fair market value of the accounts receivable on March 31, 1920, was $162,529.95.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by SMITH and LOVE.