*601 OPINION.
Morris:
The first allegation of error urged by the petitioner is that the respondent erred in including, in taxable income, $250,000 alleged to have represented a profit derived by him from the sale of Derby Oil Co. stock, which presents, first, the question of whether or not the gift of part of said stock to his wife on October 15, 1920, was bona fide and, if so, whether, as the respondent contends, the acts of the parties immediately thereafter nullified the effect of said gift in that the subject matter thereof returned to the petitioner’s complete control and was, therefore, his property at the time of the sale from which the profit in controversy was derived.
Tested by all of the essential elements for the perfection of a valid gift inter vivos, we must conclude at the very outset that the shares of stock in question became, and unquestionably were, the property of Mrs. Garden, through gift of the petitioner on October 15, 1920. That the petitioner was competent to make the gift, and that his wife *602 was capable of taking it, there can be no reasonable doubt, nor is there the slightest room for doubt that he fully intended making a gift on that date, and, furthermore, that his intention was one of long duration. That the gift was complete on that date and that nothing was left undone is borne out by facts that the petitioner had for many years contemplated and discussed plans for giving his wife an interest in his properties; that he endorsed certificates of stock aggregating 224,610 shares and on October 15,1920, surrendered them at the office of the Derby Oil Co. and had new certificates for 219,338 shares issued in the name of his wife, and that he, upon receiving the new certificates so transferred, returned to his home, and on the same day and date in the presence of several relatives and Mrs. Garden’s secretary and companion, handed them to his wife and told her that be had had the stock he promised her made over to her. Thus it will be seen that on October 15, 1920, the petitioner parted not only with the record ownership, but with full and complete control of the certificates evidencing said shares.
In substantiation of his argument that the petitioner either retained or regained control of the shares alleged to have been given to his wife, the respondent points to the conflicting testimony of Mrs. Garden as to the date upon which she executed the assignment on the certificates given her — that is, on cross-examination she appeared to testify that she executed the assignment shortly after the receipt of the certificates from her husband, whereas on redirect examination she said it was in March of 1921 just prior to the sale of those shares; also, the fact that the shares were returned to her husband for deposit in the safe-deposit box at the bank, and the fact that the contract of sale refers to the petitioner as the owner of all of the shares sold. We have satisfied ourselves that Mrs. Garden did not execute the assignment to which the respondent refers until shortly before she was confined to her bed with an illness in March, 1921, and we have so found as a fact.' That circumstance may, therefore, be dismissed from consideration.
It is believed that a brief review of all of the major factors together tending to establish ownership or lack of ownership might lead to a satisfactory solution and also obviate the necessity for considering the specific objections raised by the respondent. The record discloses that the stock in question was kept at the home of the petitioner and his wife during the night of October 15, 1920, and that it was taken by the petitioner, at the request or instigation of his wife, to the Prairie State Bank, where it was placed in a safe-deposit box, where it remained until the spring of 1921, when the sale thereof was consummated; that subsequent to October 15, 1920, all dividends on *603 tbe 219,338 shares of stock were paid to Mrs. Garden and were entered as receipts in her personal cash book; that the petitioner, having decided to dispose of his interest in the Derby Oil Co. primarily because of dissension among the officers thereof, discussed the matter with his wife, and she too expressed a desire to dispose of her interest therein. It is clear, therefore, that up to the time just preceding the consummation of the sale Mrs. Garden was perfectly cognizant of the fact that her husband, the petitioner, was negotiating for the sale of their joint interests in the Derby Oil Co., and we are further satisfied from the testimony and attendant circumstances that because of the state of Mrs. Garden’s health she intended that her husband should represent her in the matter to the extent of her interest therein. An option agreement and contracts were drawn up by a layman, less meticulous, no doubt, than a skilled draftsman of contracts would have been, for the sale of the stock owned by Smith, on the one hand, and the petitioner and his wife, on the other, in which the petitioner’s wife was not only not mentioned as one of the contracting parties, but the petitioner himself was referred to as the owner of 560,971 shares of stock, which amount included the shares here in controversy, but it is clear that the ostensible purchaser, the Guarantee Title & Trust Co., and the Prairie State Bank understood Mrs. Garden’s interest in the transaction, because the former company receipted for the shares and in so doing listed them in the name of the record owner, Grace M. Garden, and the latter, which made the payments upon the so-called Foster note to the vendors of those shares, divided the amount of the note into three parts, Smith one-half, and the petitioner and his wife a pro rata share of the other half. The petitioner received $152,148.29 and his wife $97,851.71 from the sale of their respective interests, which amounts were deposited to their separate accounts at the Prairie State Bank and were separately recorded in their individual books of account. It is true that the deposits, as they were made to Mrs. Garden’s account at the bank, were withdrawn, and turned over to the petitioner, all of which amounts, however, were very carefully recorded as loans in both the petitioner’s and Mrs. Garden’s books of account, and as evidence of the fact that they were regarded as loans, the petitioner was charged with interest in the accounts of Mrs. Garden, and on May 31, 1924, Mrs. Garden received, on account, municipal bonds and Treasury notes to the extent of $125,320.71, which amount was credited to the petitioner’s account in Mrs. Garden’s books of account.
We have carefully considered the testimony of witnesses,'bearing in mind at all times that transactions of this nature should be given the closest of scrutiny, and we are convinced that the gift of stock to Mrs. *604 Garden on October 15, 1920, was a bona fide one, and, furthermore, that she retained control and ownership thereof until disposed of in March of 1921. See Bingham v. White, 31 Fed. (2d) 574; John W. Bailey, 3 B. T. A. 362; Frederick H. Hoffmann, 3 B. T. A. 964; Martin and Arthur Zinn, 3 B .T. A. 969, and 974; Harry G. Moores, 3 B. T. A. 301; Robert Jemison et al., 3 B. T. A. 780; Earl O. Johnson, 5 B. T. A. 253.
The remaining assignments of error will be settled in accordance with the stipulation entered into between the parties and incorporated in our findings of fact herein.

Judgment will be entered under Rule 50.