## LARSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9596.

Circuit Court of Appeals, Ninth Circuit.

Feb. 17, 1941.

Rehearing Denied April 4, 1941.

H. B. Jones, of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., and J. Louis Monarch, Harry Marselli, and John A. Gage, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of a decision of the Board of Tax Appeals holding that petitioner had made a gift of 10,000 shares of stock in the Sunshine Mining Company to her son, Shirley Parker, in the summer of 1935, and that it was subject to tax under the provision of the Revenue Act of 1932, c. 209, 47 Stat. 169, Sections 501, 502, 26 U.S.C.A.Int.Rev.Acts, page 580.

Petitioner admitted the making of the gift and concedes that it was taxable, but she contends the gift was made in 1934. The sole question presented is whether the gift was consummated in 1934 or in 1935. There was testimony of conversations in 1934 between petitioner and her son, which the petitioner claims conclusively proved her then intent to give the shares of stock to him. The Board found that in 1934 the petitioner intended no more than to make a gift to her son at some future time and that it was not made until September 10, 1935.

It is not questioned that the burden of proof was upon petitioner to show a gift in 1934. The parties are agreed that the Board's decision must be affirmed unless the petitioner has sustained her burden of proof that in 1934 she then intended to make a gift of the shares to her son.

The 10,000 shares were a part of 210,-974 shares, the community property of petitioner and her husband, both residents of the State of Washington. The stock stood on the books of the Sunshine Mining Company as that of the husband on his death on June 7, 1934. By the husband's will, admitted to probate, he bequeathed to petitioner all the shares—that is, his community interest in them. The 10,000 shares were distributed to petitioner by the decree of distribution of June 25, 1935. Later the shares were transferred to petitioner by the executor of her husband's will; petitioner had issued to her new certificates of 5,000 shares each, and later endorsed and delivered them to her son.

We are of the opinion that the testimony of petitioner with reference to her intent warrants the decision of the Board that petitioner had failed to maintain her burden of proof of an intent to make a gift in praesenti in 1934. Her testimony, from which a present intent in 1934 could have been found, concluded with the statement: "A. My understanding was that I was just turning. that over to my son. I did not know how soon it could be turned over to him. I didn't really know whether it would have to wait until the estate was. settled. By 'turned over' I mean the stock certificates being transferred to him."

The Board well could have inferred that her intention was to make a gift to the son when the two 5,000 share stock certificates, issued to petitioner on September 10, 1935, were endorsed by her and given to the son. Because the estate was in probate the stock certificates could not be "turned over" to him at the time of the fixing of her intent and, as seen, they were not in fact turned over to the son until the succeeding year, after the transfer of the husband's shares to her was made on the books of the company.

The method of handling the transfer in 1935 of the shares further supports the Board's decision. On the special distribution the executor, on July 2, 1935, endorsed the certificates of the deceased husband to the petitioner. Petitioner, on September 10, 1935, caused the issuance of two certificates of 5,000 shares each to herself, instead of to her son, for which the son gave to the company his personal receipt. On September 12, 1935, the certificates, endorsed by the petitioner, were presented by the son to the Sunshine Mining Company for transfer of the shares to him. The Board could have inferred that if petitioner intended to give the shares to the son in 1934 she would have caused the two 5,000 share certificates to be issued to him instead of to herself, and that if the son himself had regarded the shares as his in 1934 he would not have had them first transferred to his mother.

It also appears that during the administration of the estate dividends on the shares were paid to the executor. A question arose between petitioner and her son whether these dividends belonged to the son, as they would have if the gift had been consummated just after the death of decedent. The son's testimony is that, when the mother endorsed the certificates to him, "We discussed something about the dividends up to that point and I said: 'Well, mother you and I are not going to quarrel over who is getting the dividends. If they come to me from now on it will satisfy me' or something to that effect." The Board could infer that if the petitioner intended a gift of the shares shortly after the death of the husband in June, 1934, there would not be the threat of a quarrel between the mother and son over the dividends distributed between the claimed gift of 1934 and the delivery of her certificates to the son in September, 1935.

The failure to prove the intent to make the gift in 1934 makes it unnecessary to consider the questions raised as to the Washington law with reference to the accomplishment of a gift of personal property out of the possession of the donor by mere verbal statements.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.

STEPHENS, Circuit Judge, concurs in the result.