RALPH R. ANDERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HERBERT R. ANDERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2386, 2387. Promulgated July 18, 1945.

*John O. Snook, Esq.*, and *Bruce S. Parkhill, Esq.*, for the petitioners.
*Edward C. Adams, Esq.*, for the respondent.

446

448

450

CPINION.

Kern, *Judge*: The basic question involved here relates to the validity of the gifts which petitioners claim to have made to members of their families.

Petitioners urge the presence here of the well recognized elements of a valid gift: (a) Donors competent to make the gift; (b) donees competent to receive and accept it; (c) effective delivery; (d) a clear and unmistakable intention on the part of the donors to divest themselves of title, dominion, and control over the property which was the subject of the gift.

There can be no serious question that the first two elements are present. While the donees were minors, and, in some cases, very young at the time the transfers were made, it is well settled that their acceptance will be presumed, if necessary to uphold the gift. *Edward N. Heller*, 41 B. T. A. 1020; affd., 120 Fed. (2d) 607; *James T. Pettus*, 45 B. T. A. 855; *H. C. Priester*, 33 B. T. A. 230; *Emil Frank*, 27 B. T. A. 1158; *Herbert L. Dillon*, 32 B. T. A. 1254.

With respect to delivery although the certificates of stock were never in the physical possession of the donees, there is authority to support petitioners' view that transfer on the corporate records may effectuate a legal delivery. However, such transfer, in itself, is not sufficient to prove a gift. *Theo. C. Jackson*, 32 B. T. A. 470. And see *Irene W. Johnson*, 39 B. T. A. 702.

The petitioners' theory is undoubtedly weakened somewhat where the corporate records are controlled by the donors and where the donors frequently endorsed the donees' names on documents requiring the endorsement of the donees. It is true that the notes which petitioners executed to their wives and children for the dividends were never in the actual possession of the payees named thereon. They were placed in a safe in the office of the company, in the care of an employee. This employee indicated that he would have been reluc-

tant to open the safe and deliver the documents to petitioners, but finally conceded that he could not have refused to do so had the request been made. Apparently, the payees of the notes knew they were being kept there and had no objection, but there is no evidence that they ever authorized the employee, Christiansen, to act as their agent. But we must remember that these notes were not the subject of any gift with which we are here concerned. The question whether there was sufficient relinquishment of dominion and control over them, or generally as to their delivery, is interesting only as it may indicate the presence or absence of good faith in the alleged gifts of the stock upon which the dividends were declared.

Looking for a moment, as we must, at the substance and practical effect of the series of transfers, we can not ignore the fact that, although the legal forms were properly executed in every case, the two petitioners who previously owned the stock, and through whose personal efforts the money was earned, continued after the transfers as before to exercise the prerogatives of stockholders in their exclusive management and control of the corporation, and continued to have the use and enjoyment of the dividends earned on exactly the same number of shares which each had previously owned.

Many things point to a lack of intent on the part of petitioners to relinquish dominion and control. Among these are the fact that in each year the transfers were made from four to fourteen days before the declaration of the substantial dividends, which were in each case immediately borrowed back and used by the petitioners; the fact that all the stock and all the notes, those of the adult transferees as well as of the children, were kept in the corporate office, where they were under the control of the petitioners; the fact that endorsements were freely made on the dividend checks made payable to the transferees; the use by petitioners of the funds derived therefrom; the fact that instructions were later issued by petitioners to the secretary, in whose immediate care the notes were kept, to destroy them, and prepare new notes; the reacquisition of the stock when petitioners desired it; the collateral agreement with the children that the notes were not to be presented for payment until they attained certain mature ages some years in the future and, in the case of the boys, then not for payment in cash, but for interests in the business; and the payment by petitioners of all the income taxes due from all the transferees on the income resulting from the transfers.

The fact that the donor did not in every case borrow the dividends on the exact stock transferred by him does not seem important, where the evidence is clear that the transfers were made pursuant to a common plan, and inevitably dividends were borrowed by each petitioner on the exact amount of stock transferred by him. Nor does the fact that the secretary did not destroy the notes pursuant to his instructions

weaken the inference that, in the minds of the petitioners, they had the power to exercise such complete dominion and control over the notes as to order them destroyed; it is evidence of their intention in that respect. Later on, when the trust agreement was invalidated, the original notes apparently were reinstated as valid in the minds of petitioners with as little formality as they had earlier ordered their destruction.

Considering all the facts, in the light of the close family relationship existing here, we conclude that petitioners have not sustained their burden of proving the respondent in error in his determination.

*Decision will be entered for respondent.*