**APT v. BIRMINGHAM.**

Civ. No. 424.

United States District Court
N. D. Iowa, Central Division.

March 25, 1950.

364

Loyal E. Keir, Des Moines, Iowa, John H. Mitchell, Fort Dodge, Iowa, for plaintiff.

Tobias E. Diamond, U. S. Dist. Atty., Sioux City, Iowa, William B. Danforth, Asst. U. S. Atty., Sioux City, Iowa, George R. Parsons, Sp. Asst. to Atty. Gen., for defendant.

GRAVEN, District Judge.

An action by the plaintiff for the recovery of federal income taxes claimed to have been erroneously and illegally assessed and collected for the year 1944. Apt Motors, Inc., was an Iowa corporation which on September 23, 1944, was operating, and for some time prior thereto had operated, a Ford automobile agency in the city of Fort Dodge, Iowa. On September 23, 1944, there were 150 shares of the capital stock of that corporation outstanding. Prior to that date all of the capital stock of that corporation was owned by the plaintiff, Elmer E. Apt. On September 23, 1944, the plaintiff, Elmer E. Apt, transferred 73 shares of the stock in that corporation to his wife, Melva R. Apt. These 73 shares, together with two other shares transferred to her by him, gave her a total of 75 shares, or one-half of the stock in the corporation. Apt Motors, Inc., was dissolved on September 30, 1944, pursuant to action taken at a special meeting of the stockholders on September 29, 1944. Under date of September 30, 1944, the plaintiff, Elmer E. Apt, and his wife, Melva R. Apt, entered into articles of partnership for the operation of a Ford automobile agency in the city of Fort Dodge under the name of Apt Motors. Elmer E. Apt and Melva R. Apt filed separate income tax returns for the year 1944 in which each of them reported a capital gain of $5,851.12 from the dissolution of Apt Motors, Inc. The examining officer for the Bureau of Internal Revenue claimed that the entire capital gain from the dissolution of Apt Motors, Inc., was taxable to Elmer E. Apt and a deficiency assessment was made against him based on such claim. The claimed deficiency, after some adjustments not here in controversy, was in the sum of $1,273.11. On October 19, 1948, Elmer E. Apt paid the said sum of $1,273.11 together with interest thereon in the amount of $274.35, or a total of $1,547.46. On October 20, 1948, Elmer E. Apt filed a claim for refund upon which no action was taken during the ensuing six months' period. On April 27, 1949, Elmer E. Apt brought this action to recover the sum of $1,547.46, together with interest and costs as provided by law. The taxability of the income of the partnership known as Apt Motors, which operated the automobile agency following the dissolution of the corporation, is not involved in this case. The only question to be decided in this case is whether the entire capital gain upon the dissolution of Apt Motors, Inc., was or was not properly taxable to Elmer E. Apt. The defendant Col-

lector makes two contentions: (1) that the transfer of shares of stock by Elmer E. Apt to Melva R. Apt on September 23, 1944, was not a valid gift; (2) that even if it were a valid gift the entire capital gain was nevertheless properly taxable to Elmer E. Apt. The plaintiff contends that the record in this case does not support either contention.

On September 23, 1944, Elmer E. Apt was approximately 44 years of age, and his wife was approximately 43 years of age. He and Melva R. Apt were married in 1935. He had been previously married, but that marriage had been terminated by a divorce in 1934. Two sons had been born of the previous marriage who in 1944 were still minors. There are no children of the second marriage. Melva R. Apt prior to her marriage to Elmer E. Apt had worked for the Piggly-Wiggly Company at Wichita, Kansas, for a period of two years and for the Railway Express Agency at Joplin, Missouri, for nine years. Her position with the Railway Express Agency was that of stenographer-clerk, and her average earnings were about $120 a month. She testified that her employment with the Railway Express Agency had given her considerable experience in regard to matters relating to personnel, collections and office administration.

Elmer E. Apt had been connected with the automobile business most of his adult life, but for some time prior to October, 1937, he had been engaged in employment not connected with that business. Melva R. Apt was of the view that he was best fitted for work connected with the automobile business and encouraged him to go back into that type of work. In October, 1937, an opportunity presented itself for him to become associated with Cutchall Motors, Inc., a corporation that operated Ford automobile agencies in Fort Dodge, Newton, and Grinnell, Iowa. On October 21, 1937, he and Melva R. Apt moved to Fort Dodge, Iowa, where he became associated with Cutchall Motors, Inc., as vice-president of the corporation and manager of the Fort Dodge agency. He replaced one Alan Bryant who was transferred to the Grinnell agency.

In October, 1937, Elmer E. Apt acquired one share of stock in Cutchall Motors, Inc., at a cost of $100. At that time the other shares of stock of Cutchall Motors, Inc., were held as follows: Alan Bryant, 10 shares; Dwight Stiles, 10 shares; Mrs. Olive Cutchall, 279 shares. Some time after January 1, 1938, Alan Bryant left the employ of Cutchall Motors, Inc., and Elmer E. Apt purchased the ten shares of stock owned by him for the sum of $950. Payment for the one share of stock and the ten shares of stock purchased by Elmer E. Apt was made by checks signed by him drawn on funds supplied by Melva R. Apt. In addition to a sum of about $1,000 which she had received in settlement for the loss of an eye in an earlier automobile accident, Melva R. Apt had saved some money from her employment prior to her marriage. In October, 1937, Elmer E. Apt had assets consisting of a 1937 Pontiac automobile and some shares of stock which were sold in 1939 for between $550 and $650.

In May, 1938, the plaintiff entered into a contract with Mrs. Olive Cutchall to purchase her 279 shares of stock for the sum of $24,116. For the purchase price of that stock Elmer E. Apt gave Mrs. Cutchall a note for approximately $6,000 and borrowed the balance from the Pioneer Finance Company of Fort Dodge, Iowa. The indebtedness to that company was evidenced by three notes. One of the three notes was in the sum of $10,000 and was secured by a pledge of 154 shares of Cutchall Motors, Inc., stock. The other two notes were unsecured. The note given by him to Mrs. Cutchall was secured by another block of Cutchall Motors, Inc., stock. The note of the plaintiff for $10,000, secured by the pledged stock, was repledged by the Pioneer Finance Company to the State Bank of Fort Dodge, Iowa, as security for its obligation or obligations to that bank. Early in 1939 that bank demanded, as a condition to the release of the $10,000 note, that Elmer E. Apt pay it the face value of the pledged stock. A compromise was reached between that bank and Elmer E. Apt whereby the pledged stock would be returned upon the payment of $11,000. In the meantime the Pioneer Finance Company had ceased oper-

ations, and its receivables were purchased from the State Bank of Fort Dodge by Securities Acceptance Corporation of Omaha, Nebraska. On July 6, 1939, Elmer E. Apt secured a loan of $17,765.34 from Securities Acceptance Corporation with which he paid off the State Bank of Fort Dodge and also paid Mrs. Cutchall the balance due on his note to her. The loan of $17,765.34 was secured by a pledge of 300 shares of stock of Cutchall Motors, Inc. The 300 shares so pledged constituted all the outstanding stock of Cutchall Motors, Inc., at that time. Starting August 15, 1939, Elmer E. Apt made payments of $250 a month on his loan to Securities Acceptance Corporation. Those payments were made out of his salary from Cutchall Motors, Inc. In March, 1942, Elmer E. Apt paid Securities Acceptance Corporation the balance due on his capital loan of $17,765.34 with funds borrowed by him from Cutchall Motors, Inc., which had in turn secured such funds by loans from Securities Acceptance Corporation, the loans being secured by used cars. By this transaction a corporate obligation was substituted for Elmer E. Apt's personal obligation, and the 300 shares of capital stock of Cutchall Motors, Inc., were released to Elmer E. Apt. Shortly thereafter he repaid Cutchall Motors, Inc., by retiring 150 shares of its stock at $100 per share. Thereafter the capital stock of Cutchall Motors, Inc., consisted of 150 shares.

In 1939 Elmer E. Apt transferred one share of stock in Cutchall Motors, Inc., to Melva R. Apt, and some time later he transferred one share of stock in the same company to one Cleve Foster, an employee. The articles of incorporation required that officers of the corporation also be stockholders therein, and these transfers were made so that the transferees might act as officers and directors of the corporation. Elmer E. Apt was at all times the real owner of those shares.

In March, 1942, Elmer E. Apt was inducted into the military service of the United States. He served in this country until November, 1942, when he was sent overseas. He returned to Fort Dodge following the completion of his military service in the forepart of September, 1944. His visits to Fort Dodge during his period of service in this country were brief. Prior to Elmer E. Apt's induction into the service the participation of Melva R. Apt in the business of the corporation had been limited to discussions with him as to receipts and expenditures, personnel, business policies and business problems. After the entry of Elmer E. Apt into the military service Melva R. Apt spent a part of nearly every day at the place of business of the corporation and continued to do so until Elmer E. Apt returned to Fort Dodge in September, 1944. Before he departed for overseas service Elmer E. Apt executed a power of attorney to Melva R. Apt, and during his absence she exercised general supervision and management of the affairs of the corporation. During the greater part of that period she paid herself a monthly salary of $150 per month. The balance sheets of the corporation indicate a very substantial increase in the surplus account of the corporation during the period that Melva R. Apt supervised its business, although it also appears from the balance sheets that the stockholders' equity in the corporation at the end of that period was approximately the same as it had been at the beginning of that period. A balance sheet of the corporation showed in addition that at the time of dissolution on September 30, 1944, Melva R. Apt owed the corporation the sum of $10,000. The origin of, and reason for, this indebtedness does not appear in the record but neither party contends that it is material to the issues herein presented. On November 12, 1943, the name of the corporation was formally changed from Cutchall Motors, Inc., to Apt Motors, Inc.

Starting in 1938 and continuing thereafter, Melva R. Apt was concerned about the matter of her having a part ownership in the business. Her concern in that regard was occasioned by the investment of her funds, time and services in the business and by the fact that there was the possibility of a claim being asserted by the former wife of Elmer E. Apt against him or his estate in the event of his death. From the time Elmer E. Apt bought out the interest

of Mrs. Cutchall in the corporation in May, 1938, there had existed a general understanding between Elmer E. Apt and Melva R. Apt that he would give her a one-half ownership in the business, and they had frequently discussed such matter prior to September 23, 1944. No particular time was fixed when the gift was to be consummated. During the period from May, 1938, to March, 1942, while the Cutchall Motors, Inc., stock owned by Elmer E. Apt was pledged as collateral for the various loans discussed above, he had an understanding with the pledgees that it would not be transferred. It is the claim of Elmer E. Apt that during the period from March, 1942, until he returned to Fort Dodge in September, 1944, he was unable to carry out his indicated intention of giving Melva R. Apt a one-half interest in the business because of his military duties which kept him away from Fort Dodge during practically all of said period.

On September 23, 1944, at the office of an attorney in Fort Dodge, Iowa, Elmer E. Apt delivered to Melva R. Apt a bill of sale, prepared by the attorney, for 73 shares of stock in Apt Motors, Inc. On the same day plaintiff caused to be issued to Melva R. Apt a certificate for 74 shares of stock in Apt Motors, Inc. These 74 shares included the one share of stock that had been transferred to Melva R. Apt in 1939 as a qualifying share, plus the 73 shares of stock included in the bill of sale. Elmer E. Apt filed a gift tax return on March 15, 1945. In that return he stated that he had made a gift of 75 shares of stock in Apt Motors, Inc., to Melva R. Apt on September 25, 1944. The evidence disclosed that about the time of the corporate dissolution Melva R. Apt received the one share of stock which had been issued to Cleve Foster as a qualifying share. No explanation was made as to why plaintiff had reported in his gift tax return that he had made a gift of stock to Melva R. Apt on September 25, 1944.

During the month of September, 1944, prior to September 23, the attorney at whose office the transfer was made had had several conferences with Elmer E. Apt and Melva R. Apt in regard to the dissolution of the corporation. Prior to September 23, 1944, the attorney, in addition to preparing the bill of sale for the transfer of the stock, had also prepared minutes of a proposed stockholders' meeting to consider dissolution of the corporation and a proposed notice to stockholders of such meeting. On September 29, 1944, the proposed meeting of the stockholders was held at which all of the outstanding stock of the corporation was represented. At that meeting it was voted to dissolve the corporation as of September 30, 1944. The assets of the corporation were, upon dissolution, distributed to Elmer E. Apt and Melva R. Apt in equal shares. Under date of September 30, 1944, Elmer E. Apt and Melva R. Apt entered into an agreement for the formation of a partnership known as Apt Motors. The assets of the partnership consisted of the assets of Apt Motors, Inc., which had been distributed to Elmer E. Apt and Melva R. Apt and contributed by them to the partnership. The partnership carried on the same type and kind of business that had been previously carried on by the corporation. The articles of partnership for Apt Motors provide that Elmer E. Apt shall act as managing partner and as such shall be in charge of the firm's business and be responsible for its proper conduct and operation, and that for his service as such managing partner, he shall be paid a salary of $200 per month. Said articles of partnership further provide that in case of Elmer E. Apt's absence or inability to act, Melva R. Apt shall act as managing partner during such period, at a salary rate of $200 per month, and that said salaries shall be deemed an operating expense of the business and shall not be charged against the share of the profits of the party receiving them.

The plaintiff does not seek to recover upon the theory that there was consideration for the transfer of the shares of stock in question to Melva R. Apt. Both in his claim for refund and in this action, it was, and is, his position that on or about September 23, 1944, he made a valid gift to Melva R. Apt of one-half of the outstanding stock of Apt Motors, Inc., and by virtue

of such gift one-half of the capital gain on dissolution of the corporation was taxable to her.

In support of his position in this case the defendant Collector emphasized the following: that here was a gift of corporate stock just six days prior to action by the stockholders voting to dissolve the corporation and just seven days prior to its actual dissolution and the distribution of its assets to the stockholders; that at the time he made the claimed gift the donor owned all of the stock in the corporation and thus could control its dissolution and that at the time of the claimed gift the papers necessary to effectuate the corporate dissolution had already been drafted. The defendant Collector contends that under the realities of the situation the transfer of stock in question amounted to nothing more than a gift of a distribution in liquidation, referring to the so-called "fruit and the ;ree" analogy. The defendant Collector states that the plaintiff merely made a gift of the fruit of the tree to Melva R. Apt, or if it could be contended that plaintiff did make a gift of the tree, such gift was made at a time when the fruit of that tree was in the process of falling from the tree. He points to that part of the partnership agreement which provides that Elmer E. Apt "shall act as managing partner, and as such shall be in charge of the firm's business and be responsible for its proper conduct and operation" as indicating that plaintiff retained control of all the corporate assets notwithstanding the transfer of stock to Melva R. Apt. In this connection the defendant Collector asserts that it is shown by the evidence that at the time of the transfer in question Melva R. Apt was under a "binding obligation" to plaintiff to vote her stock in favor of dissolution and to contribute her share of the corporate assets which she received on dissolution to the partnership. This alleged "binding obligation" is cited by the defendant Collector as further evidence that plaintiff retained control of the subject matter of the gift and that the stock transfer was a mere sham transaction and should be disregarded for federal income tax purposes.

The plaintiff testified that for some time prior to the transfer of stock to Melva R. Apt there was an "understanding" between them that the corporation would be dissolved and that they would form a partnership to carry on an automobile agency business in Fort Dodge, and he and Melva R. Apt were "definitely committed in our minds" to so do. Melva R. Apt testified that she knew the corporation was to be dissolved whenever she received the stock.

It appears that while the matter of Elmer E. Apt making a transfer of an interest in the business to Melva R. Apt had been in their thinking for a considerable period of time, the matter of dissolving the corporation and forming the partnership had not been specifically considered by them until Elmer E. Apt returned to Fort Dodge in the forepart of September, 1944. Elmer E. Apt testified that at the time of the transfer of the stock in question it was within their plan and contemplation that the corporation would be dissolved and the partnership formed but that the exact date for so doing had not been definitely fixed. It was the testimony of the attorney and Elmer E. Apt that the date for dissolution was to be one which best fit the accounting and auditing practices.

It is the plaintiff's position that the so-called "understanding" that existed between him and Melva R. Apt did not amount to a binding obligation or impose a condition upon the stock transfer and that Melva R. Apt could have voted her stock against dissolution and was free to contribute her share of the corporate assets to the partnership or not as she saw fit. The plaintiff contends further that there could be no liquidating dividend until the dissolution of the corporation and that prior to such dissolution he had made a valid gift of stock and not a gift of a distribution in liquidation inasmuch as Melva R. Apt had received full and complete dominion and control over the stock transferred to her.

The parties have cited and discussed many cases in the field of gifts involving or relating to federal tax matters which need to be considered in determining the questions presented in this case.

The dissolution of a corporation and a transfer of corporate assets to a partnership composed of the former stockholders has been held to be a distribution in the form of a liquidating dividend. Appeal of Huffman, 1924, 1 B.T.A. 52; Appeal of Buchmiller, 1925, 1 B.T.A. 380; Appeal of Rigsby, 1927, 6 B.T.A. 194; Rudolph v. Commissioner, 6 B.T.A. 265; Hastings v. Commissioner, 1927, 8 B.T.A. 670; Langstaff v. Lucas, D.C.W.D.Ky.1925, 9 F.2d 691, affirmed 6 Cir., 1926, 13 F.2d 1022, certiorari denied, 1926, 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858. Likewise a transfer of assets in complete liquidation to the wholly owned corporation of the taxpayer is regarded as a distribution in the form of a liquidating dividend. T. T. Word Supply Co. v. Commissioner, 1940, 41 B.T.A. 965. However, the gain on a sale of its property by a trust estate taxable as a corporation to a partnership composed substantially of the trust beneficiaries was held not taxable to the partners until the dissolution of the partnership in Shunk v. Commissioner, 1948, 10 T.C. 293, reversed 6 Cir., 1949, 173 F.2d 747. It should be noted that in the Shunk case the trust estate continued in existence after the sale of its assets to the partnership. See also, Chisholm v. Commissioner, 1934, 29 B.T.A. 1334, reversed, 2 Cir., 1935, 79 F. 2d 14, 101 A.L.R. 201, certiorari denied sub nom Helvering v. Chisholm, 1935, 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456; Cf. Helvering v. Wallbridge, 2 Cir., 1934, 70 F.2d 683.

There is a distinction between a distribution in liquidation of corporate assets and a sale of corporate assets. For a discussion of this distinction see Menzies v. Commissioner, 1936, 34 B.T.A. 163. And as was stated by the United States Court of Appeals for the Fourth Circuit in Timberlake v. Commissioner, 1942, 46 B.T.A. 1082, affirmed 4 Cir., 1942, 132 F.2d 259, 261, " * * * a sale of corporate assets by a corporation to its stockholders, although a distribution of its property in a literal sense, does not necessarily fall within the statutory definition of a dividend, for it may not result in such a diminution of its net worth as to effectuate a distribution of its property. But, on the other hand, such a sale of corporate assets if made for substantially less than the value of the property sold is as effective as the formal declaration of a dividend to stockholders, if in its purpose or effect it actually brings about a distribution of corporate earnings amongst them. [Citing authorities.]" See also, Palmer v. Commissioner, 1937, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50.

For purposes of arriving at the tax liability of one receiving a corporate dividend it is important to distinguish between the ordinary dividend distributed by a corporation to its stockholders and the liquidating dividend of a corporation which is being dissolved. While Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), provides in general that dividends shall be included in the gross income of a taxpayer, the ordinary dividend is defined in Section 115(a) of the Internal Revenue Code, 26 U.S.C.A. § 115(a), whereas distributions in complete or partial liquidation of a corporation are provided for in Section 115(c) of the Internal Revenue Code, 26 U.S.C.A. § 115(c).

It might be noted here parenthetically that under Iowa law the liquidating dividends of a corporation which had been dissolved and the corporate assets transferred to a partnership which continued the business of the corporation were held to be exempt from state income taxation as "capital gains" and were not taxable as "dividends." Lynch v. State Board of Assessment & Review, 1940, 228 Iowa 1000, 291 N.W. 161. The Supreme Court of Iowa went on to point out that there is a distinction between dissolution or liquidating dividends and ordinary dividends, stating at page 163 of 291 N.W., "In the case of liquidating dividends the stockholder receives a return of his own property, while in an ordinary dividend it is the profit or income that is distributed to him."

Section 115(c) of the Internal Revenue Code, supra, provides that, "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, * * *. The gain or loss to the distributee resulting from

such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112." Section 29.115-5 of Treasury Regulations 111, contains language similar to the statutory provision set out above and in addition provides that the gain or loss to a distributee of corporate assets pursuant to a corporate dissolution within the terms of Section 115(c), supra, " * * * shall be subject to the conditions and limitations provided in section 117."

■ In the present case there was a corporate dissolution and a transfer of the assets of Apt Motors, Inc., to the stockholders, followed by the establishment of a partnership and a contribution of those assets to the partnership. It is apparent in the present case therefore, that the gain to the stockholders arising upon the dissolution of Apt Motors, Inc., on September 30, 1944, and the liquidation of its stock was subject to tax under the provisions of Section 22(a) and Section 115(c) of the Internal Revenue Code, supra, and the corresponding Treasury Regulation noted above.

■ The requirements of a valid gift inter vivos have been considered by a number of courts in cases decided under the Federal Internal Revenue Acts. These requirements may be summarized as follows: (1) a donor competent to make the gift, (2) a donee capable of taking the gift, (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of all present and future title, dominion and control of the subject matter of the gift, (4) the irrevocable transfer of legal title and of the dominion and control of the gift to the donee, (5) a relinquishment by the donor of dominion and control of the subject matter of the gift by delivery from the donor to the donee. Anderson v. Commissioner, 1945, 5 T.C. 443, 450, affirmed 7 Cir., 1947, 164 F.2d 870; certiorari denied, 1948, 334 U.S. 819, 68 S.Ct. 1085, 92 L.Ed. 1749; Tyson v. Commissioner, 8 Cir., 1944, 146 F.2d 50, 54; Bardach v. Commissioner, 1935, 32 B.T.A. 517, 520, reversed 6 Cir., 1937, 90 F.2d 323; Weil v. Commissioner, 1934, 31 B.T.A. 899, 906, affirmed 5 Cir., 1936, 82 F.2d 561,

certiorari denied 299 U.S. 552, 57 S.Ct. 14, 81 L.Ed. 406; Jackson v. Commissioner, 4 Cir., 1933, 64 F.2d 359, 360; Smith v. Commissioner, 1931, 23 B.T.A. 278, affirmed in part, reversed in part, 7 Cir., 1932, 59 F.2d 533, 535, 536; Hedrick v. Commissioner, 1931, 24 B.T.A. 444, 453; Marshall v. Commissioner, 1930, 19 B.T.A. 1260, 1267, affirmed in part, reversed in part, 6 Cir., 1932, 57 F.2d 633, certiorari denied 287 U.S. 621, 53 S.Ct. 20, 77 L.Ed. 539; Copland v. Commissioner, 1929, 15 B.T.A. 238, reversed 7 Cir., 1930, 41 F.2d 501, 504; Edson v. Commissioner, 1928, 11 B.T.A. 621, reversed 8 Cir., 1930, 40 F.2d 398, 404; Becker v. Glenn, D.C.W.D.Ky. 1939, 29 F.Supp. 558, 560, 561; Lorenz v. Commissioner, 1944, 3 T.C. 746, 752; Swope v. Commissioner, 1940, 41 B.T.A. 213, 218; Gaffney, Executrix v. Commissioner, 1937, 36 B.T.A. 610, 613; Joseph v. Commissioner, 1935, 32 B.T.A. 1192, 1202; Malernee v. Commissioner, 1934, 31 B.T.A. 662, 664; Kessler v. Commissioner, 1934, 31 B.T.A. 849, 852; Ross v. Commissioner, 1933, 28 B.T.A. 39, 43; Varnell v. Commissioner, 1933, 28 B.T.A. 231, 233; Lupton v. Commissioner, 1930, 19 B.T.A. 166, 168; Levy v. Commissioner, 1930, 19 B.T.A. 605, 607; Hempstead v. Commissioner, 1929, 18 B.T.A. 204, 208; Walsh v. Commissioner, 1929, 18 B.T.A. 571, 577; Appeal of Estate of Daly, 1926, 3 B.T.A. 1042, 1044. In Basket v. Hassell, 1882, 107 U.S. 602, 2 S.Ct. 415, 27 L.Ed. 500, the United States Supreme Court, in a case not involving a question of taxation, sets forth what may be the subject matter of a gift and the requirements of a valid gift. See also; First National Bank of Boston v. Commissioner, 1 Cir., 1933, 63 F.2d 685, cases cited at page 691.

Acceptance of the gift by the donee is listed by some courts as an additional requirement for a valid gift. See, e.g., Weil v. Commissioner, 1934, 31 B.T.A. 899, 906, affirmed 5 Cir., 1936, 82 F.2d 561; Becker v. Glenn, D.C., W.D.Ky. 1939, 29 F.Supp. 558; Jackson v. Commissioner, 1935, 32 B.T.A. 470. However, it has been held that the law presumes the acceptance of a gift beneficial to the donee. Anderson v. Commissioner, 1945, 5 T.C. 443, 450, and cases cited therein, affirmed 7 Cir., 1947,

164 F.2d 870; Bardach v. Commissioner, 6 Cir., 1937, 90 F.2d 323; Walsh v. Commissioner, 1929, 18 B.T.A. 571, 578, and cases cited therein. Since in the present case there was an actual acceptance of the shares of Apt Motors, Inc., stock by Melva R. Apt, it is unnecessary to consider whether a formal acceptance of the gift by the donee is necessary to the validity of the gift.

The transfer of stock on the books of a corporation has been held sufficient in itself to constitute a delivery of said stock. Lawton v. Commissioner, 1946, 6 T.C. 1093, reversed 6 Cir., 1947, 164 F.2d 380, 384; Bardach v. Commissioner, 6 Cir., 1937, 90 F.2d 323, 326; Marshall v. Commissioner, 6 Cir., 1932, 57 F.2d 633, 634; Malernee v. Commissioner, 1934, 31 B.T.A. 662, 664. It has also been stated that, "The indorsement and delivery, or the mere delivery, of the certificates, without entry of the transfer upon the books of the corporation, is generally held to constitute a * * * completed gift of it [stock] between donor and donee." Allen-West Commission Co. v. Grumbles, 8 Cir., 1904, 129 F. 287, 291, and cases cited therein.

▆ Generally a donor attempting to comply with the requirement of delivery to the donee must go as far as the circumstances reasonably permit in irrevocably divesting himself of dominion and control of the subject matter of the gift. Weil v. Commissioner, 5 Cir., 1936, 82 F.2d 561, 563, and cases cited therein; City Bank Farmers Trust Co. v. Hoey, D.C.S.D.N.Y.1938, 23 F.Supp. 831, 833, affirmed 2 Cir., 1939, 101 F.2d 9. The retention by a donor of agency and even some proprietary rights over the subject matter of a gift has been held not sufficient to invalidate a gift if such rights were not inconsistent with the donee's immediate possession, ownership and control. Hogle v. Commissioner, 1942, 46 B.T.A. 122, reversed 10 Cir., 1942, 132 F.2d 66; Lammerding v. Commissioner, 1939, 40 B.T.A. 589, affirmed 1941, 74 App.D.C. 2, 121 F.2d 80; Smith v. Commissioner, 7 Cir., 1932, 59 F.2d 533; Edson v. Lucas, 8 Cir., 1930, 40 F.2d 398; Grissom v. Sternberger, 4 Cir., 1926, 10 F.2d 764, 767; Beaumont v. Beaumont, 1906, 144 F. 288, reversed 3 Cir., 1907, 152 F. 55, 63; Bingham v. White, D.C.Mass. 1929, 31 F.2d 574; Swope v. Commissioner, 1940, 41 B.T.A. 213; Garden v. Commissioner, 1929, 16 B.T.A. 592. However, several cases of intrafamily gifts of corporate stock discussed herein indicate that a conditional transfer of stock or the retention of some control over the stock by the donor may be sufficient to defeat such gift.

In the present case there was a transfer of stock on the books of the corporation as well as an actual delivery of the stock from plaintiff to Melva R. Apt. However, in Becker v. Glenn, D.C.W.D.Ky. 1939, 29 F. Supp. 558, at page 561 the Court stated that, "The transfer and delivery of corporate stock is not conclusive upon the question of intent where change of title is involved in fixing tax liability, and surrounding circumstances including subsequent acts of the taxpayer, may be inquired into in determining the bona fides of the transaction. [Citing authorities.]" See also, Anderson v. Commissioner, 7 Cir., 1947, 164 F.2d 870; Jackson v. Commissioner, 1935, 32 B.T.A. 470, 477, and cases cited therein. Cf. Larson v. Commissioner, 9 Cir., 1941, 117 F.2d 821.

▆▆ The third requirement of a valid gift listed above, the intent of the donor to absolutely and irrevocably divest himself of all title, dominion and control of the subject matter of the gift, is not unqualifiedly determined by the formalities which were carried out by the donor. Surrounding circumstances, including the conduct of the parties both prior and subsequent to the transaction in question, their testimony and the testimony of disinterested persons, the abilities and contributions of the parties, their relation to and confidence in each other, and any other factors which might throw light upon their true intent under the circumstances of the particular case must be scrutinized in transactions of this type. As the Board of Tax Appeals stated in Appeal of P. B. Fouke, 1925, 2 B. T. A. 219, 220, "While there is no question that husband and wife may contract with each other—may buy from and sell to each other—in all such transactions the close relationship of husband and wife is, nevertheless, to be borne in mind, and such transactions are peculiarly subject to scru-

tiny when they involve the rights of third parties. This applies either to the rights of creditors or to the rights of taxing authorities. Husband and wife may not play fast and loose with their respective properties to the prejudice of creditors, nor may they do the same thing to the prejudice of taxes which they properly owe to the Government." In the case of Richardson v. Commissioner, 2 Cir., 1942, 126 F.2d 562, 567, 140 A.L.R. 705, reference is made to the so-called "bed chamber" aspect of purported gifts between husband and wife. In Hempstead v. Commissioner, 1929, 18 B.T.A. 204, at page 209, the Board of Tax Appeals stated that, " * * * there appears to be no reason why a transaction between a husband and wife should not be as clearly defined and as fully consummated as transactions involving other persons, * * *." The principle established in Helvering v. Clifford, 1940, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788, that transactions within a family group are subject to special scrutiny in order to determine if they are in economic reality what they appear to be on their face has been approved in numerous decisions. See e. g., Doll v. Commissioner, 8 Cir., 1945, 149 F.2d 239, 244, cases cited in footnote 10, certiorari denied 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430. However, the United States Court of Appeals for the Eighth Circuit also stated in the same case, 149 F.2d at page 244, that a family relationship does not preclude arrangements between its members which will affect tax liability. See also, Commissioner v. Culbertson, 1949, 337 U.S. 733, 746, 747, 69 S.Ct. 1210. Courts on numerous occasions have stated that a taxpayer has the legal right to decrease or even avoid taxes if the method he chooses to decrease or avoid taxes is carried out by legal means and is bona fide and not a mere sham. United States v. Cumberland Public Service Co., 1949, 83 F.Supp. 843, 854, 113 Ct.Cl. 460, affirmed 1950, 70 S.Ct. 280, 282, 94 L.Ed. ——; Gregory v. Helvering, 1935, 293 U.S. 465, 469, 55 S.Ct. 466, 79 L.Ed. 596, 97 A.L.R. 1355; Superior Oil Co. v. State of Mississippi, 1930, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504; Bullen v. State of Wisconsin, 1916, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830; United States v. Isham, 1873, 17 Wall. 496, 84 U.S. 496, 506, 21 L.Ed. 728, Yiannias v. Commissioner, 8 Cir., 1950, 180 F. 2d 115; Lawton v. Commissioner, 6 Cir., 1947, 164 F.2d 380, 385; Tyson v. Commissioner, 8 Cir., 1944, 146 F.2d 50, 54; Commissioner v. Gilmore's Estate, 1941, 44 B. T.A. 881, affirmed 3 Cir., 1942, 130 F.2d 791, 795, 796, and cases cited and discussed therein; Helvering v. Johnson, 8 Cir., 1939, 104 F.2d 140, 143, affirmed 308 U.S. 523, 60 S.Ct. 293, 84 L.Ed. 443; Chisholm v. Commissioner, 2 Cir., 1935, 79 F.2d 14, 15, 101 A.L.R. 200; Jones v. Commissioner, 1930, 18 B.T.A. 1225, reversed 1934, 63 App.D.C. 204, 71 F.2d 214, 217, certiorari denied 293 U.S. 583, 55 S.Ct. 97, 79 L.Ed. 679; Johnson v. Commissioner, 1936, 33 B.T.A. 1003, affirmed 2 Cir., 1936, 86 F.2d 710, cases cited at p. 712; Iowa Bridge Co. v. Commissioner, 1929, 14 B.T.A. 1048, reversed, 8 Cir., 1930, 39 F.2d 777, 781; Ford v. Nauts, D.C. N.D.Ohio 1928, 25 F.2d 1015; Bing v. Bowers, D.C.S.D.N.Y. 1927, 22 F.2d 450, 452, affirmed, 2 Cir., 1928, 26 F.2d 1017; Fraser v. Nauts, D.C.N.D.Ohio 1925, 8 F.2d 106, 107; Tully Trust v. Commissioner, 1943, 1 T.C. 611, 620; Sherwin v. Commissioner, 1942, 46 B.T.A. 330, 336; McKee v. Commissioner, 1937, 35 B.T.A. 239, 242; Malernee v. Commissioner, 1934, 31 B.T.A. 662, 665; Walsh v. Commissioner, 1929, 18 B.T.A. 571, 577. See also, Commissioner v. Tower, 1944, 3 T.C. 396, reversed, 6 Cir., 1945, 148 F.2d 388, reversed 1946, 327 U.S. 280, 288, 66 S.Ct. 532, 90 L. Ed. 670, 164 A.L.R. 1135.

■ It has also been held that there is nothing per se suspicious in a gift of shares of stock by a husband to his wife, and there is nothing illegal or improper about such transaction. Bardach v. Commissioner, 6 Cir., 1937, 90 F.2d 323, 326; Tracy v. Commissioner, 1932, 25 B.T.A. 1055, reversed, 6 Cir., 1934, 70 F.2d 93, 94; Marshall v. Commissioner, 6 Cir., 1932, 57 F.2d 633, 634; Malernee v. Commissioner, 1934, 31 B.T.A. 662, 665.

■ With respect to intrafamily transactions the United States Supreme Court has emphasized that taxation is an intensely

practical matter, concerned more with the economic realities than the legal formalities of a transaction and that the command over property or the enjoyment of its economic benefits marks the real owner for federal income tax purposes. See, Anderson v. Commissioner, 7 Cir., 1947, 164 F.2d 870, cases cited at page 873; Doll v. Commissioner, 8 Cir., 1945, 149 F.2d 239, cases cited at page 243, footnotes 6 and 7. See also, Commissioner of Internal Revenue v. Wodehouse, 1949, 337 U.S. 369, 69 S.Ct. 1120. In recent cases the United States Court of Appeals for the Eighth Circuit has also approved that doctrine. Spies v. United States, D.C.N.D.Iowa 1949, 84 F. Supp. 769; affirmed, 8 Cir., 180 F.2d 336, and Keokuk & Hamilton Bridge Company v. Commissioner, 8 Cir., 1950, 180 F.2d 58.

■ It is apparent therefore that the mere passage of title to property will not insulate the transferor against federal income tax liability unless such passage of title is accompanied by a complete shift of the economic benefits of ownership. Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), provides a broad base for the taxing of gains, profits and income derived from any source whatever. The Supreme Court has indicated that by the enactment of said Section 22(a) Congress exercised to the full measure its constitutional power to tax income. See, Doll v. Commissioner, 8 Cir., 1945, 149 F. 2d 239, cases cited at page 243, footnote 8.

The parties in their briefs and arguments discussed at some length the matter of economic gain on invested capital as income and when such gain becomes "realized" by a taxpayer for federal income tax purposes.

In an early case arising under the Corporation Excise Tax Act of 1909, the Supreme Court defined income as, "the gain derived from capital, from labor, or from both combined". Stratton's Independence v. Howbert, 1913, 231 U.S. 399, 415, 34 S.Ct. 136, 141, 58 L.Ed. 285. This definition of income was approved in Doyle v. Mitchell Bros. Co., 1919, 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054. See also, Southern Pacific Co. v. Lowe, 1918, 247 U.S. 330, 335,

38 S.Ct. 540, 62 L.Ed. 1142. The Corporation Excise Tax Act of 1909 was not an income tax law but a definition of "income" was necessary to its administration.

In the oft-cited case of Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, the Supreme Court discussed at length the characteristics and attributes of income within the meaning of the Sixteenth Amendment and the provisions of the Revenue Acts of that period. In holding that stock dividends were not income to the recipient the Court cited with approval the definition of income arrived at in Stratton's Independence v. Howbert, supra, with the provision that income also be understood to include profit gained through a sale or conversion of capital assets. The Supreme Court in Eisner v. Macomber, supra, went on to point out that the "gain" referred to in said definition of income was not a profit *accruing to* capital similar to an increase in the value of an investment, but was rather a profit or something of exchangeable value *proceeding from* or *severed from* the capital or property. (Italics supplied). It was indicated that income is essentially a gain or profit in itself of exchangeable value and that a determination of what is income must be made according to substance rather than form. In discussing the fundamental relation of "capital" and "income" the metaphysical analogies of the fruit and the tree and the crop and the land were referred to by the Court. The distinction between assigning the "tree" and assigning the "fruits of the tree" is well illustrated in Lum v. Commissioner, 3 Cir., 1945, 147 F.2d 356. In that case a husband assigned to his wife only the right to receive the rent under the first lease in question and the Court held such rent taxable to the husband. However, the husband assigned to his wife all his rights as landlord under the second and third leases and the Court held the wife taxable on the rents from those leases on the ground that the husband had really effected an assignment of the "tree" in the case of the second and third leases. See also, Mitchell v. Commissioner, 1932, 27 B.T.A. 101.

The question of whether a trustee was taxable on the gain arising from a sale of corporate stock which was a part of the trust estate was before the Supreme Court in Merchants' Loan & Trust Co. v. Smietanka, 1921, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305. In that case the Court, after citing with approval many of their prior decisions relating to the meaning of income within the terms of the Sixteenth Amendment, the Corporation Excise Tax Act of 1909, and the Income Tax Acts of 1913, 1916, and 1917, defined income at page 518 of 255 U.S., page 388 of 41 S.Ct. 65 L.Ed. 751, 15 A.L.R. 1305, as a gain derived from capital, from labor, or from both combined, including profit gained through the sale or conversion of capital assets.

In Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, the Supreme Court, speaking through Justice Holmes, refused to allow a husband to escape taxes on his income by way of salaries and attorney fees through a contractual arrangement by which he and his wife were to receive, hold and own such earnings as joint tenants. The Court went on to add that the import and reasonable construction of the Revenue Acts of 1918 and 1921 was to tax income to the individual who actually earned it, and any anticipatory arrangements which attempted to attribute such income to some one else would be ineffective for federal income tax purposes. See also, Burnet v. Leininger, 1932, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665 (wife not taxable on a portion of husband's partnership income); Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (husband taxable on income paid to wife under revocable trust agreement). Cf. Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (assignment of beneficiary's interest in trust estate effective to render assignee taxable on income therefrom). In Burnet v. Wells, 1933, 289 U.S. 670, at page 677, 53 S.Ct. 761, 763, 77 L.Ed. 1439, Justice Cardozo stated "Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918, and United States v. Boston & Maine R. Co., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929, held that income was received by a taxpayer when pursuant to a contract a debt or other obligation was discharged by another for his benefit, the transaction being the same in substance as if the money had been paid to the debtor and then transmitted to the creditor. Cf. United States v. Mahoning Coal R. Co., [6 Cir.] 51 F.2d 208. In these and other cases there has been a progressive endeavor by the Congress and the courts to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment or fruition."

A taxpayer's use of his power to dispose of income to which he was entitled was held to be equivalent to a realization of such income by the donor-taxpayer in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. The taxpayer in that case was the owner of negotiable bonds and had detached from the bonds negotiable interest coupons before their due date and delivered said coupons as a gift to his son who collected on them. In holding the donor taxable on the income from the coupons, the Court emphasized that realization of income is the taxable event within the meaning of the revenue laws and such realization may occur either when a taxpayer is in actual receipt of such income, or when he enjoys the benefit of the economic gain represented by such income through the procurement of a satisfaction which is procurable only by the expenditure of money or money's worth. "The power to dispose of income is the equivalent of ownership of it." 311 U.S. at page 118, page 147 of 61 S.Ct., 85 L.Ed. 75, 131 A.L.R. 655. In accord with its earlier decisions the Court indicated that form should not be allowed to obscure reality and that it was not so much concerned with refinements of title as with the actual command over the income taxed. See also, United States v. Joliet and Chicago R. Co., 1942, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658 (lessor corporation held taxable on sums paid as dividends to its stockholders by lessee corporation); Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, rehearing denied 1941, 312 U.S. 713, 61 S.Ct. 609, 85 L.Ed. 1144 (assignment of insurance renewal commissions ineffective to

relieve assignor-agent of tax thereon); Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055 (life beneficiary-assignor taxable on trust income assigned to her children); Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (husband who retained almost complete control over short term trust taxable on the income therefrom); Commissioner v. First State Bank of Stratford, 1947, 8 T.C. 831, reversed 5 Cir., 1948 168 F.2d 1004, 7 A.L.R. 2d 738, certiorari denied 1948, 335 U.S. 867, 69 S.Ct. 137 (bank which declared dividend in kind to stockholders of worthless notes on which it had been making recoveries held to receive taxable income on collections subsequently made by bank official). Cf. Commissioner v. Culbertson, 1949, 337 U.S. 733, 739, 740, 69 S.Ct. 1210; Brown v. Commissioner, 1949, 12 T.C. 1095, reversed 3 Cir., 180 F.2d 926.

 The cases indicate that the United States Supreme Court has not hesitated to disregard the most intricate schemes and elaborate formalities in arriving at the real substance and effect of a particular transaction. It is authoritatively established by the United States Supreme Court that if a taxpayer merely transfers income which actually belongs to him, or if he attempts to transfer property and the end result of such transfer does not effect a complete shift in the economic incidents of ownership of such property the transaction or transactions will be disregarded for federal income tax purposes. The crux of the problem or the decisive question presented in the cases where there was an alleged transfer of property seems to be the amount of control retained by the donor, assignor or transferor over such property. Where the donor, assignor or transferor retained such control over the property that he was the one deriving the real benefit from the economic gain thereon, he was held taxable on such economic gain, whereas if he parted with his entire "bundle of rights" in such property, he was held not taxable on the gain thereon.

The Treasury Regulations, in defining income for federal income tax purposes, follow generally the principles established in the various Supreme Court decisions cited above. Section 29.21-1 of Treasury Regulations 111, provides in part,

"In the computation of the tax various classes of income must be considered:

"(a) Income (in the broad sense), meaning all wealth which flows in to the taxpayer other than as a mere return of capital. It includes the forms of income specifically described as gains and profits, including gains derived from the sale or other disposition of capital assets."

Section 29.22(a)-1 of Treasury Regulations 111, provides in part, "In general, income is the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets."

In reference to ordinary dividends of a corporation the same Section 29.22(a)-1 provides further, "The fact that a dividend is declared shortly after the sale of corporate stock and the sale price is influenced by the expectation of the payment of a dividend, does not make such dividend when paid taxable to the vendor as a dividend. The amount advanced by the vendee to the vendor in contemplation of the next dividend payment is an investment of capital and may not be claimed as a deduction from gross income."

 Thus in the present case, if plaintiff retained such control of the stock given to Melva R. Apt that he merely transferred his right to the capital gain on the liquidation of said stock, then plaintiff should be taxable thereon under the principles of the Supreme Court decisions heretofore cited. On the other hand, if plaintiff did part with all control over said stock, then Melva R. Apt necessarily became the owner of said stock and was taxable on the capital gain arising upon its liquidation. The surrounding circumstances as well as the actual legal formalities complied with by the parties bear upon a determination of the question as to whether plaintiff intended to and actually did part with all dominion and control over the stock transferred to Melva R. Apt.

 It seems apparent from the cases and regulations heretofore cited that

the mere appreciation in value of assets is not a taxable event. There must be a realization of such gain or appreciation in value. Under these decisions, a donor, assignor or transferor is held to "realize" taxable income when he is in actual receipt of such income or when he enjoys the benefit of economic gain represented by such income to which he has an unqualified right, thereby deriving a satisfaction which is procurable only by money or money's worth. The income in the latter case cannot be said to be "realized" at the time of the gift, assignment or transfer, but rather when actual payment is received by the donee, assignee or transferee. As stated in Commissioner v. First State Bank of Stratford, 168 F.2d 1004, at page 1010, 7 A.L.R.2d 738, "After assignment and prior to payment the tax liability is incomplete. The rule is founded upon administrative convenience, and operates to postpone the taxable event until realization is consummated by the assignee's receipt of the money [citing authority]. The reasoning underlying the rule, it is said, is the thought that the 'taxpayer procured the satisfaction of his wants' by diverting to others the income which he could have received himself, and that thereby he enjoyed the fruits of his labor or investment." In Shunk v. Commissioner, 6 Cir., 1949, 173 F.2d 747, at page 752 the Court stated, "Even though there has been a severance of the property from the corporation, it does not become taxable income to the individual who ultimately receives it until he receives it or his unqualified right to it has matured. Frazer v. Commissioner, 6 Cir., 157 F.2d 282, 284, certiorari denied 329 U.S. 807, 67 S.Ct. 502, 91 L.Ed. 689; Schaefer v. Bowers, 2 Cir., 50 F.2d 689, certiorari denied 284 U.S. 668, 52 S.Ct. 42, 76 L.Ed. 566; Perkins v. Commissioner, 8 T.C. 1051, 1056; Robertson v. Commissioner, 6 T.C. 1060."

There are many cases involving transfers of corporate stock or other securities between members of a family group. An analysis of these cases indicates some of the factors which the courts have considered in arriving at the validity or invalidity of the transaction in question. A number of these cases have had to do with the taxability of subsequent dividends on the stock which has been the subject matter of the transfer.

In Hoag v. Commissioner, 10 Cir., 1938, 101 F.2d 948, an alleged gift of stock from a husband to his wife was held invalid and he was taxed on the subsequent dividends thereon. The fact that the stock was redelivered to the donor, that he received and used the dividends thereon, his previous conviction for income tax evasion and other circumstances were held sufficient to support the conclusion that there had been no valid gift for federal income tax purposes.

In Sewell v. United States, 1947, 73 F. Supp. 957, 109 Ct. Cl. 623, a husband directed the book transfer of shares of stock in his corporate business to his wife. The wife never received or voted the stock and took no part in the business. The Court of Claims concluded that the alleged gifts of stock were invalid and the husband was taxable on subsequent dividends thereon in view of the fact that he really controlled the stock and also the dividends. A state court decision to the contrary was held not controlling for federal income tax purposes. The Court of Claims went on to state at page 965 of 73 F.Supp., "It is necessary to look behind the mechanics of these transactions to determine the real ownership. * * * During the years in controversy the apparent ownership of these shares could be moved around like the sun and moon in a theater and made to shine from any angle to suit the whims of the stage director or the pleasure of the audience."

In Anderson v. Commissioner, 1945, 5 T.C. 443, affirmed 7 Cir., 1947, 164 F.2d 870, alleged gifts of stock from two husbands to their wives and children were held invalid in spite of the proper execution of the legal formalities of a gift. The Tax Court's determination that the transfers were made in each year just shortly prior to the declaration of dividends, which in each case were borrowed back and used by the husbands, and that the notes to secure these loans as well as the stock itself remained in the control of the donors led the Court to conclude that the gifts were invalid and the wives and children should be taxable on the dividends thereon. In

affirming the Tax Court decision the United States Court of Appeals for the Seventh Circuit indicated that the evidence supported the conclusion that the donors had remained the substantial owners of the stock transferred and a state court decision to the contrary was held not controlling for federal income tax purposes. The Court of Appeals also indicated that the Tax Court had impliedly approved the Commissioner's action disregarding the transfers for purposes of determining the capital gain upon a liquidation distribution of the stock in the year 1940.

The retention of substantial control by the donors in Overton v. Commissioner, 1946, 6 T.C. 304, was considered determinative by the Tax Court which held that alleged gifts of class B stock from two husbands to their wives were in substance only a device to distribute, in the guise of dividends, income earned by the class A stock which was retained by the husbands. The dividends on both classes of stock were accordingly held to belong to the donors.

The entire record was held insufficient to support an alleged gift of stock from a husband to his wife in Godwin v. Commissioner, 1936, 34 B.T.A. 485, and the husband was held taxable on the dividends thereon. It appeared that the husband controlled and voted the stock and also received some of the dividend payments.

In Joseph v. Commissioner, 1935, 32 B.T.A. 1192, an alleged gift of stock from a husband to his wife was held invalid and the husband was held taxable on subsequent dividends thereon. The Board of Tax Appeals reached its conclusion in view of evidence that the stock was never transferred on the books of the corporation until the Commissioner questioned the gifts and that the husband used some of the stock as collateral for his loans and even sold some of it, receiving the proceeds. In addition the husband received the dividends on said stock and the records of the parties did not indicate that his wife received either the proceeds from the sales or the dividends for her own use at any time.

 Even though there may be a bona fide intention to make a gift, if the formal requirements of a gift are not complied with, the gift may be held invalid. Varnell v. Commissioner, 1933, 28 B.T.A. 231. In the Varnell case a father attempted to give his children some stock but since there was no actual or constructive delivery and the father received the dividends before distributing them to his children, the Board of Tax Appeals concluded that the father had not relinquished complete control and domination of the stock and should be held taxable on the dividends thereon.

In Hempstead v. Commissioner, 1929, 18 B.T.A. 204, the evidence was held not sufficient to support a gift of stock from a husband to his wife and the husband was held taxable on the dividends thereon.

Alleged gifts of securities from several husbands to their wives were held invalid in Tuffli v. Commissioner, 1928, 13 B.T.A. 1255, as the Board of Tax Appeals failed to find either actual or constructive delivery in the deposit of such securities in a safety deposit box to which the wives had access. The husbands were accordingly held taxable on the income from these securities. See also, Schoenheit v. Lucas, 4 Cir., 1930, 44 F.2d 476.

In Marshall v. Commissioner, 6 Cir., 1932, 57 F.2d 633, the Court was concerned with the taxability of dividends on stock which had allegedly been given by a husband to his wife. As to that stock which was only indorsed in blank and deposited in the wife's safety deposit box the Court held that there was not a complete relinquishment of dominion and control by the husband and he was accordingly held taxable on the dividends from such stock. However, as to those shares which had been transferred on the books of the corporation the Court held that the husband could not thereafter have regained dominion and ownership of said stock except through the independent and voluntary act of his wife and the wife was thus held taxable on the dividends from such stock. Cf. Richardson v. Commissioner, 1939, 39 B.T.A. 927, affirmed in part, reversed in part, 2 Cir., 1942, 126 F.2d 562, 140 A.L.R. 705.

378

Retention of the stock in his account was held not fatal to a gift of such stock from a husband to his wife in Hedrick v. Commissioner, 1931, 24 B.T.A. 444. The husband had clearly stated his intention to give the stock to his wife, she had agreed to his retention of the stock certificates, and she had also received the dividends thereon. The Board of Tax Appeals accordingly held that the wife was taxable on such dividends.

Gifts of stock from a husband to his wife and children were held valid in Swope v. Commissioner, 1940, 41 B.T.A. 213, and the wife and children were held taxable on subsequent dividends thereon. In that case the husband had declared his intention of making the gifts and since there had been delivery and acceptance of the stock, the fact that the wife and children had consented to the husband using the stock as collateral for his loans and to his receipt of the dividends and the deposit of said dividends in a joint bank account was held not determinative.

Valid gifts of stock from a husband to his wife and daughter were held to have been made in Washington v. Commissioner, 1937, 36 B.T.A. 74. The Board of Tax Appeals found that the wife had helped her husband start and develop his business, the gifts were made without any reservations, the husband intended to part with the shares and there was no understanding between the parties in regard to the use of the shares or the dividends from the shares. The wife and daughter were accordingly held taxable on the dividends from the stock given to them.

Transfers of stock from a father to his minor children and the opening of brokerage accounts in their names were upheld as valid gifts in Frank v. Commissioner, 1933, 27 B.T.A. 1158. The fact that the father retained control of said stock and managed it was held not to affect the validity of the gifts since the Board of Tax Appeals found that he was their natural guardian and did everything he could reasonably have been expected to do in making delivery under the circumstances. A similar result was reached in Dillon v. Commissioner, 1935, 32 B.T.A. 1254.

In Levy v. Commissioner, 1930, 19 B.T.A. 605, a gift of stock from a husband to his wife was upheld and the wife was held taxable on the dividends thereon. The Board of Tax Appeals stated that the donee did not owe her husband anything and she did not pay him anything for the stock; there was delivery and acceptance of said stock and the wife received the dividends thereon and participated in negotiations for the sale of her stock receiving the proceeds therefrom. All these factors pointed to an unconditional transfer from husband to wife in the Board's opinion.

A gift of stock from a father to his minor son was upheld in Fidelity-Philadelphia Trust Co. v. Commissioner, 1929, 16 B.T.A. 1214. The Board of Tax Appeals disregarded the fact that the father managed the business and received the dividends, later repaying the son, in view of the fact that the father would naturally help and advise his son and these things were done with the son's consent.

Other cases of intrafamily gifts or transfers of stock or other securities have involved a determination of who is taxable on income from the stock or the proceeds from the subsequent sale of such stock.

In Jackson, et al. v. Commissioner, 1935, 32 B.T.A. 470, an uncle formally transferred stock to his nieces. Notwithstanding these formalities, the Board of Tax Appeals found that the donor had no clear and unmistakable intention to make a gift of stock to his nieces and there was no irrevocable transfer of dominion and control of the stock to the donees. The donor was accordingly held taxable on the profits from the sale of such stock. The absence of any expression by the donor showing an intent at the time of the transfer to make an outright gift as well as the donor's control of the donees and the inference that the transfer was merely a device to reduce tax liability were factors which the Board of Tax Appeals emphasized in reaching its conclusion.

Retention by the donor of control and custody of stock which he allegedly had given to his minor children was held fatal to such gift in Weil v. Commissioner, 1934,

31 B.T.A. 899, affirmed, 5 Cir., 1936, 82 F.2d 561, and the father was held taxable on the profit on the subsequent sale of the stock. The appellate Court held that the intended gift took final effect only upon the proceeds of the sale since the father had retained control of the stock in order to sell it for his children.

An alleged gift of stock from a son to his mother was held invalid in Appeal of Greenblatt, 1925, 2 B.T.A. 77, and the son was held taxable on the proceeds from the sale of said stock. The Board of Tax Appeals found that the son had made no formal delivery but had retained control of the stock and also had received and used the proceeds from its sale.

In Sewell's Estate v. Commissioner, 5 Cir., 1945, 151 F.2d 806, certiorari denied 1946, 327 U.S. 805, 66 S.Ct. 961, 90 L.Ed. 1030, an alleged gift of stock from a husband to his wife was held invalid on the ground that the husband had not parted with all dominion and control over the subject of the gift. The Court therefore concluded that the wife had never become a partner in business with her husband and he was held taxable on the entire income from such business. The United States Court of Appeals for the Fifth Circuit reached a similar result on similar facts in Sewell v. Commissioner, 5 Cir., 1945, 151 F.2d 765, certiorari denied 1946, 327 U.S. 783, 66 S.Ct. 683, 90 L.Ed. 1010, rehearing denied 1946, 329 U.S. 819, 67 S.Ct. 26, 91 L.Ed. 697.

Where a husband transferred securities to his wife who thereupon assigned them to him and to herself as trustees for their children under a trust deed revocable by him, the husband was held taxable on the income therefrom on the ground that he had failed to make a gift of such securities in that he had not divested himself of dominion and control over said securities. Jackson v. Commissioner, 4 Cir., 1933, 64 F.2d 359.

In Bardach v. Commissioner, 6 Cir., 1937, 90 F.2d 323, formal transfers of stock from two husbands to their wives were held valid gifts and the wives were held taxable on subsequent dividends thereon as well as on the profit on the subsequent sale. The Court disregarded the fact that the parties had joint bank accounts and a common safety deposit box and held that the disposition made by the wives of their dividend checks and the proceeds from the sale of the stock was also immaterial.

In Dulin v. Commissioner, 1932, 25 B.T.A. 1259, reversed, 6 Cir., 1934, 70 F.2d 828, the delivery of a stock certificate from a husband to the transfer clerk of a corporation coupled with an instruction to transfer the stock to his wife was held sufficient to constitute a gift of stock to the wife and she was held taxable on the subsequent sale of part of the stock.

The retention by a mother of a beneficial interest in stock which she had allegedly given to her daughter was held not sufficient to defeat such gift in the early case of Edson v. Lucas, 8 Cir., 1930, 40 F.2d 398. The Court indicated that the beneficial interest retained was not inconsistent with the passing of title or the donee's immediate possession and control. Accordingly the donee was held taxable on the profit arising from the subsequent sale of the stock given to her. It is indicated that under the present trend of judicial decisions the retention of an interest in the subject matter of a gift by a donor which indicates that the transfer is a conditional one may be sufficient to defeat such transfer.

In Becker v. Glenn, D.C., W.D.Ky.1939, 29 F.Supp. 558, the donee was held taxable on gain derived from the sale of stock given to her by her husband. The Court stated that it was immaterial that the husband come into physical possession of the stock immediately after transferring it to his wife, and that pursuant to an agreement with his wife the husband used the proceeds from the sale of such stock to purchase other securities in his own name.

In Malernee v. Commissioner, 1934, 31 B.T.A. 662, a gift of stock from a husband to his wife was held to be a valid gift of stock and not a gift of the proceeds from the sale of such stock. The Board of Tax Appeals stated at page 665 of 31 B.T.A., "The motive which activated petitioner is immaterial, if he intended to and did in

good faith make a valid gift. [Citing authorities.]"

The Board of Tax Appeals upheld a gift of stock from a husband to his wife in Hobbs v. Commissioner, 1932, 26 B.T.A. 241. Since it appeared that there were no conditions attached to the gift of stock and it had been consummated prior to any discussion of the sale of such shares, the wife was held taxable on the profit arising on the sale of the stock given to her.

Gifts of stock in trust from two husbands to their wives, children and grandchildren were held valid in Walsh v. Commissioner, 1929, 18 B.T.A. 571, and the husbands were held not taxable on profits from the sale of such stock. The husbands were found to have had a legal right to make these gifts and they had indicated an intent to make absolute and irrevocable gifts.

In Garden v. Commissioner, 1929, 16 B.T.A. 592, the Board of Tax Appeals emphasized that the husband had for many years contemplated and discussed plans for giving his wife an interest in his properties and his gift of stock to her was merely a fulfillment or execution of this long-standing intention. The wife was held taxable on the proceeds from the subsequent sale of the stock which had been given to her.

A gift of stock from a husband to his wife and the subsequent sale of said stock by the wife on the same day was held to have given rise to no taxable income since the gift was bona fide in Wiess v. Commissioner, 1927, 7 B.T.A. 467.

In Appeal of Moores, 1926, 3 B.T.A. 301, gifts of stock from a husband to his wife and children made just prior to the sale of said stock were held to be valid gifts of stock and not gifts of the proceeds from the sale of stock and the donees were held taxable on the gain arising from said sale. The Board of Tax Appeals found that the husband had a long-standing intention to make the gifts in order to repay his wife for her services and to establish a separate estate for his children. In addition the Board of Tax Appeals determined that the husband had gone as far as he could in relinquishing dominion and control of the

stock and no agreement for the sale of said stock had been reached as of the time the gifts were made.

In Appeal of Bailey, 1926, 3 B.T.A. 362, the Board of Tax Appeals held that a husband had made valid gifts of stock and not of the proceeds from the sale of stock to his wife, sisters and secretary. The taxpayer had informed the donees of his intention to make the gifts some weeks prior to the actual delivery of the stock and absolute gifts were made 5 days before any offer to purchase the stock had been made. The Commissioner's contention that the donor knew of the impending sale of the stock and therefore only made a gift of the proceeds from that sale was disregarded by the Board of Tax Appeals in view of the evidence presented. The donees were held taxable on the gain derived from the sale.

The entire record was held to support the conclusion that a transfer of stock from a husband to his wife was a bona fide gift of stock rather than a gift of the proceeds from the sale of such stock and the wife was accordingly held taxable on the gain arising from the sale in Appeal of Hoffmann, 1926, 3 B.T.A. 964. Interestingly enough this decision was reached in spite of the fact that the husband had decided to make the gift in question after he had learned that it would be a means of effecting substantial tax savings. Related cases are, Appeal of Martin Zinn, 1926, 3 B.T.A. 969; Appeal of Arthur Zinn, 1926, 3 B.T.A. 974.

In Richardson v. Smith, 2 Cir., 1939, 102 F.2d 697, 125 A.L.R. 774, the United States Court of Appeals for the Second Circuit stated that a husband may make a valid gift of stock to his wife even though he believes that he can prevail upon his wife to comply with his demands regarding the subject matter of the gift. See also, Smith v. Commissioner, 1944, 3 T.C. 894, and cases cited therein. Cf. Richardson v. Commissioner, 2 Cir., 1945, 151 F.2d 102, certiorari denied 1946, 326 U.S. 796, 66 S.Ct. 490, 90 L.Ed. 485; Richardson v. Commissioner, 1939, 39 B.T.A. 927, affirmed in part, reversed in part, 2 Cir., 1942, 126 F.2d 562, 140 A.L.R. 705; Richardson v. Commissioner, 2 Cir., 1941, 121 F.2d 1, certiorari de-

nied 1941, 314 U.S. 684, 62 S.Ct. 188, 86 L.Ed. 548, rehearing denied 1941, 314 U.S. 714, 62 S.Ct. 359, 86 L.Ed. 569.

Gifts from a husband to his wife and to his sales manager of beneficial interests in an oil lease were analogized to gifts of corporate stock in Kessler v. Commissioner, 1934, 31 B.T.A. 849. The gifts were sustained since the husband had parted with dominion and control over said interests.

Those cases in which a husband attempted to give, transfer or assign to his wife or to other members of his family group a portion of his interest in a business, or other property, either as an outright gift or in trust, follow generally the same principles as do the cases of intrafamily transfers of stock or securities. Many of these cases involving intrafamily transfers of an interest in a business have to do with a determination of the validity or the invalidity of the much-discussed family partnership. Representative examples of cases in which such intrafamily gifts, transfers or assignments were upheld are: Simmons v. Commissioner, 5 Cir., 1947, 164 F.2d 220 (some of the transfers were held invalid); Thomas v. Feldman, 5 Cir., 1946, 158 F.2d 488; Commissioner v. Johnston, 6 Cir., 1939, 107 F.2d 883; Smith v. Commissioner, 7 Cir., 1932, 59 F.2d 533; Copland v. Commissioner, 7 Cir., 1930, 41 F.2d 501; Delchamps v. Commissioner, 1949, 13 T.C. 281; Smith v. Commissioner, 1944, 3 T.C. 894, and cases cited therein; Potter v. Commissioner, 1942, 47 B.T.A. 607; Oakley v. Commissioner, 1931, 24 B.T.A. 1082. Cf. Henson v. Commissioner, 1948, 10 T.C. 491, reversed, 5 Cir., 1949, 174 F.2d 846.

Representative examples of cases in which alleged intrafamily gifts, transfers or assignments of property were held invalid are: Yiannas v. Commissioner, 8 Cir., 1950, 180 F.2d 115; Economos v. Commissioner, 4 Cir., 1948, 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53; Fletcher v. Commissioner, 1946, 7 T.C. 1186, affirmed 2 Cir., 1947, 164 F.2d 182, certiorari denied 1948, 333 U.S. 855, 68 S.Ct. 733, 92 L.Ed. 1136 (brother-sister transfer); Hash v. Commissioner, 1945, 4 T.C. 878, affirmed 4 Cir., 1945, 152 F.2d 722, certiorari denied

1945, 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614, rehearing denied 1946, 328 U.S. 879, 66 S.Ct. 1340, 90 L.Ed. 1647; Grant v. Commissioner, 10 Cir., 1945, 150 F.2d 915; Bradshaw v. Commissioner, 10 Cir., 1945, 150 F.2d 918; Tyson v. Commissioner, 8 Cir., 1944, 146 F.2d 50; Losh v. Commissioner, 1943, 1 T.C. 1019, affirmed 10 Cir., 1944, 145 F.2d 456; Hogle v. Commissioner, 1942, 46 B.T.A. 122, reversed 10 Cir., 1942, 132 F.2d 66 (the transfers involving gifts of stock from parents to their children were held valid); Earp v. Jones, 10 Cir., 1942, 131 F.2d 292, certiorari denied 1943, 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1136; Mead v. Commissioner, 5 Cir., 1942, 131 F.2d 323, certiorari denied 1943, 318 U.S. 777, 63 S.Ct. 851, 87 L.Ed 1146; Guaranty Trust Co. v. Commissioner, 1937, 35 B.T.A. 916, Id., 36 B.T.A. 597, affirmed 2 Cir., 1938, 98 F.2d 62; Johnson v. Commissioner, 1936, 33 B.T.A. 1003, affirmed 2 Cir., 1936, 86 F.2d 710; Thorrez v. Commissioner, 1945, 5 T.C. 60; De Korse v. Commissioner, 1945, 5 T.C. 94; Miller v. Commissioner, 1949, P–H T.C.Memo. par. 49,001. See also, Grayson v. Deal, D.C.N.D.Ala. 1949, 85 F.Supp. 431. Cf. Doyle v. Commissioner, 1944, 3 T.C. 1092, affirmed 4 Cir., 1945, 147 F.2d 769; Myers v. Commissioner, 1948, 11 T.C. 164; Morrison v. Commissioner, 1948, 11 T.C. 696.

In support of his contention that the gift of stock from plaintiff to Melva R. Apt was invalid the defendant Collector points to the provision of the partnership agreement, set out above, providing that plaintiff should be responsible for the operation of the partnership. The defendant Collector argues that the retention of such control over the partnership of Apt Motors is evidence that plaintiff never parted with dominion and control over the assets allocable to the stock transferred to Melva R. Apt, and cites in support of his contention, Commissioner v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

There was some evidence in this case to the effect that plaintiff did take over active management of the business upon his return from the service in 1944. However, plaintiff points out that in cases of this type the donor is almost always more closely

connected with the management of the business than the donee and that his powers of control and management of the partnership were not relevant unless they amounted to a retention of some rights of ownership over the entire assets of the business. Plaintiff claims that the powers of a donor-partner could be compared with the powers of a settlor-trustee to manage the assets of the trust on behalf of the trustees. Judge Magruder, in United States v. Morss, 1 Cir., 1947, 159 F.2d 142, 145, 146, affirming D.C., 64 F.Supp. 996, succinctly stated the principles which should control in determining whether a settlor-trustee is taxable on trust income because of his retention of managerial powers, in the following words, "The powers of management, extensive as they are, vest in the taxpayer only in his capacity as trustee, and for so long as he may remain a trustee. Upon familiar principles they will be construed to be fiduciary powers, which must be exercised in good faith for the best interests of the trusts and of the beneficiaries therein, rather than for the benefit or aggrandizement of the trustee personally. [Citing authorities.]" In Treasury Regulations 111, Section 29.22(a)–21(e) (4), the Commissioner of Internal Revenue has stated, "The mere fact that a power exercisable by the trustee is described in broad language does not indicate that the trustee is authorized to purchase, exchange, or otherwise deal with or dispose of the trust property or income for less than an adequate and full consideration in money or money's worth, or is authorized to lend the trust property or income to the grantor without adequate interest. On the other hand, such authority may be indicated by the actual administration of the trust."

In Commissioner v. Tower, supra, there were factors other than the vesting of broad managerial powers in the donor-husband which lead the Supreme Court to deny the validity of the intrafamily gift. The transfer was conditioned upon the wife's agreement to place the corporate assets represented by the stock shares in the new partnership, the wife contributed no services to the partnership and the husband controlled her share of the profits

from the partnership. In view of all of these factors the Supreme Court concluded that the whole transaction was a mere sham and should be given no effect tax-wise.

Another conditional, intrafamily transfer of stock was involved in Lowry v. Commissioner, 1944, 3 T.C. 730, affirmed 6 Cir., 1946, 154 F.2d 448, certiorari denied 1946, 329 U.S. 725, 67 S.Ct. 73, 91 L.Ed. 628. In that case two husbands made alleged gifts of stock to their wives pursuant to a plan involving the dissolution of the corporation and the transfer of the assets to a partnership. The parties had discussed this plan for a considerable period of time prior to the stock transfers and had decided on such plan of action in order to effect tax savings. The alleged gifts were made, the corporation liquidated and its assets transferred to a partnership composed of the two husbands and their wives. The Tax Court found that the husbands did not divest themselves of dominion and control of the assets of the corporation represented by the stock they transferred to their wives and therefore held the gifts of stock and the family partnership invalid. It appeared that the terms of the partnership agreement gave the husbands the right to determine the book value of their wives' contributions to the partnership, provided for the retention by the husbands of valuable property rights in the business and broad control over the assets allegedly "contributed" to the partnership by the wives. In addition, the distribution of profits and losses from the operation of the partnership as well as the distribution of assets upon the dissolution of the partnership was subject to the control of the husbands. Also, the stock transfers were made subject to a prior agreement between the partnership and its members that it must first be offered to stockholders and the alleged gifts were made with full understanding that the plan devised by the husbands for the dissolution of the corporation and the transfer of the corporate assets to a partnership would be carried out. Judge Disney of the Tax Court pointed out in a dissenting opinion that a condition subsequent accom-

panying a gift and not affecting the donee's title to the property does not render the gift invalid. Since the condition attached to the stock transfer in the Lowry case was performed, Judge Disney was of the opinion that the gifts were valid. On this point see the Court of Appeals opinion in the Tower case, 6 Cir., 148 F.2d 388, 390. The Tax Court decision in the Lowry case was affirmed by the United States Court of Appeals for the Sixth Circuit on the authority of the Supreme Court decision in the Tower case. Conditional intrafamily transfers of property were held not to constitute gifts, and were held invalid in Whiteley v. Commissioner, 1940, 42 B.T.A. 402, affirmed 3 Cir., 1941, 120 F.2d 782, certiorari denied 1941, 314 U.S. 657, 62 S. Ct. 110, 86 L.Ed. 527. Empire Trust Co. et al. v. Commissioner, 1940, 41 B.T.A. 839, affirmed 2 Cir., 1941, 119 F.2d 421; Guaranty Trust Co. v. Commissioner, 1937, 35 B.T.A. 916, Id., 36 B.T.A. 597, affirmed 2 Cir., 1938, 98 F.2d 62; Johnson v. Commissioner, 1936, 33 B.T.A. 1003, affirmed 2 Cir., 1936, 86 F.2d 710; Myers v. Commissioner, 1948, 11 T.C. 164; Akers v. Commissioner, 1946, 6 T.C. 693; Munter v. Commissioner, 1945, 5 T.C. 39; Thorrez v. Commissioner, 1945, 5 T.C. 60. But see, Whayne v. Glenn, D.C.W.D.Ky.1945, 59 F. Supp. 517, 524. However, it has also been held that the donor's mere belief, however well founded, that the donee will permit him to control the subject matter of the gift and his purpose to do so are not sufficient in themselves to render the gift invalid or a sham. Richardson v. Smith, 2 Cir., 1939, 102 F.2d 697, 125 A.L.R. 774.

Some courts have denied the validity of a gift of stock or the gift of an interest in a business where it involved members of a family group and the donor retained broad powers of management and control over the subsequent partnership. See e. g., Lowry v. Commissioner, 1944, 3 T.C. 730, affirmed 6 Cir., 1946, 154 F.2d 448; Grant v. Commissioner, 10 Cir., 1945, 150 F.2d 915; Tyson v. Commissioner, 8 Cir., 1944, 146 F.2d 50; Sewell v. United States, 1947, 73 F.Supp. 957, 109 Ct.Cl. 623. It should be noted that in some of these cases the evidence rather conclusively supported a finding that the transaction was a sham while in others there was evidence that the donor not only had retained broad managerial powers, but in addition had such power over the very assets of the business that he could control their disposition. The United States Court of Appeals for the Fifth Circuit has indicated that, following gifts of stock to their children, the control which a husband and wife may exercise over a corporation is in their capacity as stockholders and directors and is subject to the law regulating those relationships as well as to the powers of a court of equity if abused. Commissioner v. Montgomery, 1943, 1 T.C. 1000, affirmed 5 Cir., 1944, 144 F.2d 313, 316. It should be noted that in many of these cases involving intrafamily transfers there was a great deal of evidence having to do with the operation of the subsequent partnership whereas the record in the present case is rather limited in this respect since the validity of the partnership entered into by plaintiff and Melva R. Apt on September 30, 1944, was not before the Court. It is the view of the Court that the mere fact that under the articles of partnership Elmer E. Apt was to be the managing partner is not sufficient in and of itself to establish that Elmer E. Apt retained control over the subject matter of the gift.

The defendant Collector contends that where all the details regarding the disposal of property have been completed prior to an intrafamily transfer of such property, the donor or transferor cannot escape tax liability on the subsequent sale of such property, citing McInerney v. Commissioner, 1933, 29 B.T.A. 1, affirmed 6 Cir., 1936, 82 F.2d 665, and Vlchek v. Commissioner, 1927, 7 B.T.A. 1244. These cases along with Cook v. Commissioner, 1945, 5 T.C. 908, discussed infra, are strongly relied upon by the defendant Collector in the present case.

In the McInerney case the petitioner had agreed to arrange for the sale of the properties of a corporation which previously had employed him as general manager. The corporate properties were transferred to petitioner only after he had completed all arrangements for their sale and said

transfer was made in order to allow petitioner to complete the sale. Approximately a month after receiving these properties petitioner allegedly gave a one-half interest in said properties to his wife and within two or three days after such gift his wife joined petitioner in the conveyance of said properties to the purchaser in accordance with the prior agreement. The Court held that under all the circumstances it did not appear that petitioner intended that his wife should have any real interest in the properties inasmuch as he had arranged for the sale of said properties more than a month prior to the alleged gift to his wife and she had acted at every point in accordance with that agreement. Petitioner was therefore held taxable on the entire gain on the sale of the properties. Since at the time he made the gift to his wife petitioner in the McInerney case had already completed arrangements for the sale of the properties and thus had an unqualified right to the proceeds from that sale, his wife by her independent action could not rightfully have defeated said sale. Thus the McInerney case might well have been decided under the anticipatory assignment of income doctrine discussed above. The defendant Collector calls attention to the following statement in the McInerney case at page 668 of 82 F.2d: "A single transaction may not be broken up into various elements to avoid a tax. [Citing authorities.]"

Vlchek v. Commissioner, supra, involved an alleged gift of stock from a father to his children followed by the sale of the stock and the dissolution of the corporation. The father owned slightly more than one-half the stock of said corporation and there was evidence that he had arranged for the sale of the stock owned and controlled by him prior to the alleged gift. However, he delivered the stock to his children and they had voted to sell such stock at a meeting held for that purpose several weeks later. They had also received the proceeds from said sale. The Board of Tax Appeals stated that the record was conflicting as to the validity of the gift but the fact that the father had stated in his income tax return for the year in question that he owned all the stock and had repeated such assertion in affidavits used in various proceedings before the Commissioner of Internal Revenue as well as in his original petition in the case under consideration seemed to indicate the absence of an intention on his part that the stock so delivered should be the property of the donees. The conclusion was further substantiated by evidence that the father had made some arrangements for the sale of the stock prior to the gift and there existed an understanding that the proceeds of the sale should be invested in a family corporation under his control. The father was accordingly held taxable on the entire gain on the sale of the stock in question.

The defendant Collector cites Commissioner v. Court Holding Co., 1945, 324 U. S. 331, 65 S.Ct. 707, 89 L.Ed. 981, as being analogous to the present case. In the Court Holding Co. case a husband and wife owned all the stock of a corporation which was organized solely to buy and hold an apartment building. After making oral arrangements for the sale of said building the corporation called the sale off because of probable unfavorable tax consequences. The next day the corporation conveyed the building to its stockholders (husband and wife) as a liquidating dividend and they carried out the sale under substantially the same terms and conditions previously agreed upon, even to the extent that $1,000 already paid to the corporation was applied as part payment of the purchase price. The Supreme Court held that the executed sale was in substance a sale by the corporation rather than by its stockholders and stated at page 334 of 324 U.S., page 708 of 65 S.Ct. 89 L.Ed. 981, "The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using

the latter as a conduit through which to pass title. [Citing authorities.] To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

In a recent case, United States v. Cumberland Public Service Co., 83 F.Supp. 843, 113 Ct.Cl. 460, affirmed 1950, 70 S.Ct. 280, 94 L.Ed. ——, the Supreme Court clarified its decision in Commissioner v. Court Holding Co., supra. Mr. Justice Black, who had delivered the opinion of the Court in the Court Holding Co. case, also delivered the opinion in the Cumberland case. In the latter case the shareholders of corporation A, because they knew that corporation A could not compete with TVA power, offered to sell the stock of corporation A to B, a cooperative distributing TVA power. B did not want the stock but offered to buy certain property from A. A rejected this offer because it would have been compelled to pay a heavy capital gains tax. The shareholders of A then offered to acquire the property from A and sell it to B. Upon B's acceptance of this offer, A distributed the property in question to its shareholders in partial liquidation. The remaining assets were sold and corporation A was dissolved. The shareholders then executed the previously contemplated sale to B. The Commissioner of Internal Revenue made a deficiency assessment against corporation A upon the theory that its shareholders had been used as a mere conduit in effectuating what was really a corporate sale. In holding that the sale was made by the shareholders rather than by the corporation the Court of Claims found that the method used to effect the sale was chosen in order to reduce taxes, but that the liquidation and dissolution genuinely ended A's existence and that at no time did A plan to make the sale itself. In affirming the decision of the Court of Claims the Supreme Court distinguished the Court Holding Co. case on the ground that the decision there rested on findings of fact by the Tax Court that the corporation had reached an oral agreement of sale, that it never really abandoned the sales negotiations, that it never did dissolve, and that the sole purpose of the "liquidation" was to disguise a corporate sale through the use of mere formalisms. The Court recognized that under the present tax pattern different tax consequences may flow from different methods by which the shareholders of a closely held corporation may dispose of corporate property and that it is for the trial court to consider the motives, intent, and conduct of the parties, in addition to what appears in written instruments used by the parties to control rights as among themselves, in order to determine the factual category in which a particular transaction belongs. Cf. Commissioner v. Transport Trading & Terminal Corporation, 1947, 9 T.C. 247, reversed 2 Cir., 1949, 176 F.2d 570, certiorari denied 1950, 70 S.Ct. 493.

An early case, Appeal of Jemison, 1926, 3 B.T.A. 780, involved circumstances somewhat analogous to the Court Holding Co. and the Cumberland cases. There a corporation holding undeveloped real property was dissolved during the pendency of negotiations for the sale of such property and the property was transferred to its stockholders who consummated the sale. The Board of Tax Appeals found that the dissolution of the corporation was not a mere subterfuge and held that the stockholders rather than the corporation were taxable on the gain from the sale of the property. Another interesting feature of this case was that shortly before the dissolution of the corporation the two individuals who owned all of its stock each made a gift of one-half of his stock to his wife. The Board of Tax Appeals held that these were valid gifts of stock and not of the proceeds from the sale of the property and the husband-donors were held taxable on only one-half of the gain arising upon the subsequent dissolution of the corporation and the sale of its property.

The plaintiff cites as analogous to the present case a number of cases in which a transfer of securities or property was upheld even though negotiations were pending for the disposition of the property or the redemption of the securities. In Peebles v. Commissioner, 1945, 5 T.C. 14, pe-

titioner conveyed an undivided interest in some timber land to his wife individually and another undivided interest to her as trustee for their minor son. Petitioner had intended to make these conveyances for a long period of time but did not execute the deeds until December 8, 1941. On December 9, 1941, petitioner reached a tentative agreement to sell the timber to a company with which he had had prior negotiations. On December 15, 1941, the sale was consummated with the wife entering into the agreement both individually and as trustee, and receiving her share of the proceeds which she invested for herself and their son. The Tax Court determined that the capital gains on the sale of the interests in the timber which had been transferred to the wife were properly taxable to her individually and as trustee since petitioner had made an effective gift on December 8, 1941.

In Beard v. Commissioner, 1945, 4 T.C. 756, a taxpayer who, prior to its redemption, sold his stock to the redeeming corporation in order to realize a long term capital gain rather than an ordinary gain which he would have realized if he had held the shares until they were redeemed, was held to have been justified in taking such action. Transactions of a related nature have been held valid in other cases. See, Hobby v. Commissioner, 1943, 2 T.C. 980; Tully v. Commissioner, 1943, 1 T.C. 611; McKee, et al. v. Commissioner, 1937, 35 B.T.A. 239; Appeal of Sullivan, 1925, 2 B.T.A. 1012. But see, Schoen v. Commissioner, 1934, 30 B.T.A. 1075.

In some cases of this type the Tax Court has taken the position that a husband may transfer to his wife a one-half interest in his property or stock plus a one-half interest in a contract of sale covering such property or stock, so that she is taxable on one-half of the proceeds from a subsequent sale of such property or stock. See Bassett v. Commissioner, 1935, 33 B.T.A. 182, affirmed 2 Cir., 1937, 90 F.2d 1004; Wright v. Commissioner, 1932, 26 B.T.A. 21, and cases cited and discussed therein.

The defendant Collector in the present case relies very strongly on Cook v. Commissioner, 1945, 5 T.C. 908. In the Cook case the alleged gifts of stock from a father to his sons took place approximately a week after a stockholders' meeting at which the stockholders had approved the prior sale of a major portion of the corporate assets and had voted to sell the remaining assets and to dissolve the corporation. Approximately a week after the stock transfers the stock which the father had purportedly given to his sons was voted by him as their proxy. In holding that the father had made gifts of a portion of the distributions in liquidation rather than gifts of stock the Tax Court stated that the above facts indicated that at the time of the alleged gifts the corporation was already in the process of liquidation, i. e., the severance of the economic gain from the investment had already taken place. Cf. Shunk v. Commissioner, 6 Cir., 1949, 173 F.2d 747; Le Sage v. Commissioner, 5 Cir., 1949, 173 F.2d 826, 827. The Tax Court in the Cook case noted that all the circumstances of the case established that the father never intended that his sons should exercise any ownership over the stock. The father was accordingly held taxable on the entire gain arising from the corporate dissolution. The plaintiff contends that the present case is distinguishable on its facts from the Cook case in that there had been no dissolution or liquidation of Apt Motors, Inc., prior to the stock transfer in question.

While admitting that there is no family partnership issue involved in the present case, the plaintiff cites a number of family partnership cases involving intrafamily stock transfers prior to the formation of the partnerships as being analogous to the present case, even though there was no capital gains issue involved in those cases. The plaintiff contends that in those cases the validity of the stock transfers and the validity of the partnerships were usually determined to be interdependent the one upon the other and therefore the factors considered by the courts in arriving at their decisions in those cases should be given consideration in the present case. In Merz v. Commissioner, 1949, 12 T.C. 1076, the wife had contributed her own capital to

her husband's leather novelties business. Upon the incorporation of that business she was issued 5 shares of stock and was made an officer in the corporation. Shortly prior to the dissolution of said corporation her husband had sufficient shares of stock transferred to her so that she had a 40% interest in the business while he retained a 50% interest and a third party held a 10% interest. The corporation was dissolved and a partnership formed with each of the three parties contributing their respective interests in the assets of the corporation to the partnership. The Tax Court found that the wife had worked for the corporation for a period of years prior to its dissolution and concluded that she did not purchase the 40% of the corporate stock which stood in her name at the time of the dissolution of said corporation but rather had earned that share of the business. Accordingly the stock transfer from husband to wife was upheld as was the subsequent family partnership.

In Theurkauf v. Commissioner, 1949, 13 T.C. 529, a husband made a gift of one-half the shares of stock in his corporation to his wife on October 9, 1936, after he had decided to change the business to a partnership. On the basis of evidence that the husband had a stock certificate issued and delivered to his wife and his testimony that he intended to vest in his wife full, complete and irrevocable legal ownership of the shares covered by the certificate with no conditions or limitations attached, the Tax Court made a finding to that effect. The Theurkauf case was distinguished from Commissioner v. Tower, supra, on the ground that there had been a condition attached to the gift of stock in the Tower case. The Tax Court concluded that when the corporation was dissolved on October 31, 1936, and the assets transferred to a partnership, the wife had made a contribution of her own capital to the partnership and had thus become a valid partner. There was a vigorous dissent in the Theurkauf case, centered primarily on the apparent failure of the majority to consider any factors relevant to the formation of the partnership other than the captial contributions of the parties.

In Greenberger v. Commissioner, 7 Cir., 1949, 177 F.2d 990, gifts of stock from a husband to his wife and from both the husband and wife in trust for their children were held valid and each of the parties was regarded as having made a capital contribution to a partnership which was formed some months after the gifts of stock had been made.

Middlebrook v. Commissioner, 1949, 13 T.C. 385, involved a gift of 199 shares of stock from a husband to his wife in July, 1938. In November, 1938, the husband was advised that he should change the form of his business to a partnership. At first his wife refused to consent to this proposed change since she was to inherit a large estate. However, she finally consented and on March 8, 1939, her husband transferred an additional share of stock to her and 5 shares to a third party. Thereafter the husband held 250 shares, his wife held 200 shares and a third party held 50 shares. On March 15, 1939, the corporation was dissolved and its assets transferred to a partnership under an agreement providing that each of the three stockholders made a contribution to the partnership in proportion to their stockholdings. The Commissioner of Internal Revenue argued that the wife had made no contribution of capital to the partnership because there had been no valid gift of stock from the husband to his wife inasmuch as he was still the majority stockholder even after the alleged gift and so really controlled the corporation and could have had it dissolved. In rejecting this argument the Tax Court pointed out that a minority as well as majority stockholder could own stock and the real question was whether the husband had retained dominion and control over the shares of stock transferred to his wife. From all the facts of the case the Tax Court concluded that the husband had not retained control of the stock and therefore the gift was valid and the wife had made a capital contribution to the partnership. The Middlebrook case was compared to Weil v. Commissioner, supra, and distinguished from Commissioner v. Tower, supra, on the ground that the transfer in the Middlebrook case had been unconditional.

There are a number of cases other than those heretofore noted dealing with the problem of determining which distributees of corporate assets following an intra-family transfer of stock and a dissolution of the corporation should bear the capital gains tax imposed upon such corporate dissolution and the distribution of its assets to its stockholders.

In Wolf v. Commissioner, 1949, 8 T.C. M. 949, a husband had 50 shares of stock issued to his wife and the same number of shares issued to his daughter on December 24, 1940. There were no conditions or limitations attached to this stock transfer and to the extent that it represented capital of the corporation in excess of the original capital contributions of the wife and daughter, the husband intended thereby to make a complete and irrevocable gift to them. On December 27, 1940, the stockholders entered into an agreement designated articles of partnership and on December 31, 1940, the corporation was dissolved and its assets distributed to its stockholders who in turn contributed them to the partnership. The husband as well as his wife and daughter were assessed and paid a capital gains tax on that portion of the corporate assets which they each had received. The Tax Court apparently approved this action by the Commissioner relative to the assessment of the capital gains tax and also held that the three parties were taxable on the income from the partnership in the ratio of their capital contributions to it. The Tax Court in the course of the opinion stated: "Here petitioner, his wife and his daughter not only became shareholders in the company but by agreement among themselves they became equal owners therein. The differing amounts contributed by each did not deter respondent in determining the taxable gain on the corporate liquidation. He taxed them according to their ownership of the shares, as determined by them * * * Since the petitioner, his wife and his daughter agreed to share their interests equally instead of in proportion to the capital contributed by each, it is not for us to say that they exercised poor judgment or that the reasons for their action were inade- quate and thus to 'substitute our judgment for that of the parties.' Here the division of the petitioner's holdings was made following the capital contributions of his wife and his daughter in the corporation. The donations made by the petitioner and the respective shares resulting therefrom were contributed to the business when the partnership was formed."

Lawton v. Commissioner, 1946, 6 T.C. 1093, reversed 6 Cir., 1947, 164 F.2d 380, which is relied upon by the plaintiff, involved alleged gifts of stock from a husband to his wife and from both the husband and wife to their children over a period of several years from 1937 to 1940. In 1940 the husband decided to dissolve the corporation and to form a partnership. Articles of partnership were accordingly executed giving each of the partners their proportionate interest that they held in the corporation. In their 1940 returns each of the partners reported a long term capital gain upon the liquidation of the corporation. The Commissioner contended that the stock transfers were invalid and thus the husband had remained the sole stockholder in the corporation and the entire capital gain arising upon the corporate liquidation should be taxable to him. The Tax Court upheld the Commissioner on this point finding that the donees of the stock had never exercised any dominion or control over said stock. The Tax Court also held the subsequent family partnership invalid. The United States Court of Appeals for the Sixth Circuit set aside the Tax Court decision, holding that the gifts of stock were valid and not sham transactions. The Court of Appeals emphasized that a transfer of stock on the books of a corporation was sufficient to constitute delivery, the donees were usually present at the meetings of the corporation and the entire picture presented was that of a coordinated family enterprise. The family partnership was also held valid for federal income tax purposes. Although the Court of Appeals did not specifically reverse the Tax Court on the capital gain issue, it appears that the effect of their decision was to do so, inasmuch as they held the gifts of

stock valid. See Kent v. Commissioner, discussed infra.

The Courts in Lawton v. Commissioner, supra, and in Middlebrook v. Commissioner, supra, distinguished those cases from Commissioner v. Tower, supra, on the ground that there was no evidence of an intention to dissolve the corporations and to form the subsequent partnerships at the time of the stock transfers in the Lawton and Middlebrook cases whereas such an intention had existed at the time of the stock transfer in the Tower case. In the present case the defendant Collector contends that the Lawton case and the Middlebrook case can both be distinguished from the present case on the same ground as they were distinguished from the Tower case. On the other hand plaintiff contends that such statements by the Courts in the Lawton and Middlebrook cases constitute unnecessary dictum because the evidence in those cases clearly indicated that the stock transfers were valid gifts and not mere sham transactions and on that ground those cases were distinguishable from the Tower case.

Fisher v. Commissioner, 1948, 7 T.C.M. 814, a Tax Court decision which followed the Court of Appeals' decision in the Lawton case, is relied upon by the plaintiff in the present case. In the Fisher case two partners in the popcorn business decided in 1933 to incorporate their business with each of them to own one-half of the capital stock. Both partners married women who had been employed in the business for a number of years. In 1941, one of the wives insisted that her husband transfer to her a share in the business pursuant to an agreement between them to that effect which had been reached several years previously. After consultation with the other partner and his wife, a decision was reached to carry out this agreement, to dissolve the corporation and establish a partnership. Accordingly, on April 26, 1941, each partner transferred to his wife ¼ of the capital stock of the corporation. On April 30, 1941, the corporation was dissolved and each of the 4 stockholders received ¼ of the corporate assets which they in turn contributed to a partnership established the next day. The Tax Court held that the wives had received valid gifts of stock from their husbands and had made contributions of both capital and services to the family partnership and were therefore taxable on their shares of the income therefrom. In regard to the taxability of the capital gain arising upon the corporate liquidation in 1941, the Tax Court was of the opinion that that issue was controlled by the Court of Appeals' decision in Lawton v. Commissioner, supra. The capital gain attributable to the stock which had been given to the wives was therefore held taxable to them. The defendant Collector contends that the decision in the Fisher case is based upon a misinterpretation of the Lawton case since the appellate Court in the latter case had stated that there was no intention to form a partnership at the time of the stock transfer in that case and such intention had existed in the Fisher case. As noted above, it is the plaintiff's position that the statement by the Court in the Lawton case regarding the absence of a pre-existing intention to form a partnership is unnecessary dictum and therefore the Fisher case was correctly decided.

The case of Kent v. Commissioner, 1947, 6 T.C.M. 429, reversed 6 Cir., 1948, 170 F. 2d 131, is relied upon by the plaintiff in the present case. In that case a husband who was engaged in operating a flying school under the name of Southern Air Services, Inc., made an unconditional transfer of 90% of the common stock of that corporation to his wife and 10% to a third party. This transfer was made on October 31, 1941, pursuant to a plan to dissolve the corporation and form a partnership since the Army, which was to take over the school, indicated an unwillingness to deal with a corporation. On October 31, 1941, the same day as the stock transfer, the corporation was dissolved, the assets distributed and a partnership entered into between the wife and the third party. Each contributed the assets received upon the dissolution of Southern Air Services, Inc., to the partnership and reported a long term capital gain on the corporate dissolution. The Tax Court held the subsequent

partnership invalid for federal income tax purposes. Since the business subsequent to the dissolution was determined to be under the control of the husband, the Tax Court concluded that there had been no valid transfer to the wife, and that regardless of the question of bona fides, the transaction was only an anticipatory arrangement which should be treated as a mere formalism. The Tax Court held further that the decision as to the invalidity of the partnership was determinative of the capital gain issue. In reversing the Tax Court, the United States Court of Appeals for the Sixth Circuit emphasized that the gift of stock from the husband to his wife was the crux of the case. The Court of Appeals found that said gift was unconditional and irrevocable, that both the husband and wife had taken great financial risks in setting up the partnership in accord with Army demands, that a gift tax return had been filed, that the wife had reported the capital gain upon the corporate dissolution and concluded that the gift as well as the partnership was valid. No specific reference was made to the capital gain issue, but here again, as in the Lawton case, it appears that the appellate Court reversed the Tax Court decision on that issue also.

A somewhat different situation was involved in Dirksen v. Commissioner, 1931, 24 B.T.A. 1152. In that case a husband had made a gift of stock to his wife several years prior to corporate dissolution in recognition of her financial assistance to him. Just a few days prior to dissolution the wife assigned her stock to her husband for purposes of dissolution. The corporation was dissolved, its assets distributed to the stockholders and a partnership between the husband and wife was subsequently formed. In spite of the fact that the husband had kept possession of the stock and there was no indication that his wife had voted said stock, the Board of Tax Appeals concluded that she was really the owner of the stock which had been given to her and was taxable on the gain on such shares of stock arising upon the liquidation of the

corporation. Cf. Myers v. Commissioner, 1940, 42 B.T.A. 640.

In Mallery v. Allen, D.C.M.D.Ga.1947 [1] the Court instructed a jury that if some legal step toward dissolution of the corporation had been taken before the stock transfer was made then the donor was taxable on the entire capital gain arising upon the dissolution of the corporation, but if the stock transfer had preceded any legal step toward dissolution then the donees were taxable on the capital gain on the liquidation of the stock given to them. Under these instructions the jury found that no legal steps for dissolution had been taken prior to the stock transfer. There was no indication, however, as to what was the factual background under which the jury returned this verdict.

In Thornton v. Commissioner, 1945, 5 T.C. 116, a husband gave his wife 10 shares of stock on November 16, 1940, and on that same date she became an officer in the corporation. The name of the corporation was changed in March, 1941, and about May, 1941, it was decided that a partnership form of business would save taxes. The husband gave his wife 115 shares of stock on June 11, 1941. The Tax Court found that there were no conditions attached to these stock transfers and that the wife had a right to do as she pleased with said stock, the husband never thereafter exercising any control over it. On June 12, 1941, the stockholders voted to dissolve the corporation and on June 30, 1941, said dissolution took place and the corporate assets were distributed to the husband and his wife as stockholders. Also, on June 30, 1941, a partnership agreement was entered into between the husband and wife providing for equality of interest in the ownership of the business and for the sharing of profits and losses. The wife contributed no services to the partnership. The Tax Court held that the gifts of stock and also the subsequent partnership were valid. Commissioner v. Tower, supra, and Lowry v. Commissioner, supra, were distinguished on the basis of the conditions attached to the stock transfers and the

---

1. No opinion for publication.

control over the subject matter of the gifts which was retained by the donors in those cases. The Tax Court in the Thornton case also held that the husband and wife were each taxable on one-half of the capital gain on the liquidation of the corporation.

In Hardymon v. Glenn, D.C.W.D.Ky. 1944, 56 F.Supp. 269, a husband had discussed with his wife and children the advisability of a partnership over a corporate form of operation but had reached no decision prior to making gifts of corporate stock to them on December 23, 1939, and January 3, 1940. The gifts were made in two different calendar years in order to take advantage of the annual gift tax exemption. These gifts were accomplished by transfers on the corporate books as well as by an actual delivery of the stock certificates to the donees. The gifts were not conditioned upon any contract or enforceable agreement on the part of the wife or children that after becoming stockholders in the corporations they would dissolve the same. Following the gifts on December 23, 1939, tentative articles of partnership were drawn up. The corporations were dissolved on January 4, 1940, and on January 5, 1940, written articles of copartnership were entered into between the husband, his wife and their six children. Each of the partners contributed to the partnership assets they had received on the dissolution of the corporations. In their 1940 returns each of the partners reported the capital gain resulting from the gifts of stock and the subsequent corporate dissolutions and paid the tax thereon. Each partner also reported his share of the partnership income for the year 1940. The Commissioner contended that the gifts of stock were invalid and that the gain on the corporate dissolutions and the income from the partnership should be taxed to the husband. The District Court rejected the Commissioner's contentions and held the gifts valid. The Court pointed out that the recognition of the validity of the gifts was really determinative of the other questions involved and concluded that the family members had correctly reported their share of the capital gain upon the dissolution of the corporations as well as their share of partnership income for 1940. The Court went on to state at page 274 of 56 F.Supp., "We concede that if the evidence showed that the gifts from the plaintiff to his wife and children were conditional, or were made under any obligation on the part of the donees to thereafter dissolve the corporations and merge the assets into a partnership, the transaction would not withstand the scrutiny required by the Supreme Court decisions above referred to; but the evidence completely fails to establish either of those facts. The case is necessarily controlled by what the record shows rather than by what the Commissioner contends without supporting evidence. Although the plaintiff may have contemplated and expected that his wife and children would later be willing to dissolve the corporations and form a partnership, yet it is undenied by the evidence that there was no obligation on their part to do so. The gifts created rights in them which they could exercise or not, according to their own judgment and decision. There is a marked legal distinction between creating rights which you trust will not be exercised and creating no legal rights at all; a transaction of the first kind changes existing legal relations between the parties, while the other does not. Johnson v. Commissioner, 2 Cir., 86 F.2d 710, 712."

As heretofore noted, the requirements of a valid gift under the Federal Internal Revenue Acts are: (1) a donor competent to make the gift, (2) a donee capable of taking the gift, (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of all present and future title, dominion and control of the subject matter of the gift, (4) the irrevocable transfer of legal title and of the dominion and control of the gift to the donee, (5) a relinquishment by the donor of dominion and control of the subject matter of the gift by delivery from the donor to the donee. While there is no dispute between the parties in this case as to requirements (1) and (2) above, the parties are in controversy as to whether requirements (3), (4) and (5) have been

met, with the principal controversy on this phase of the case having to do with whether requirement (3) has been complied with.

Under the record in this case it appears that for several years prior to the transfer in question Elmer E. Apt intended to make a gift of a one-half interest in the business to Melva R. Apt and she desired and expected to receive such a gift. They both felt that the making of such a gift would be just and desirable. The various circumstances which led them to feel that such a gift was just and desirable were: (1) the fact that she had supplied the funds for his earlier purchases of stock in the corporation, (2) her assistance in formulating policies of the business and in actively assisting in the operation of the business, (3) the possibility of a claim being made against Elmer E. Apt, or in the event of his death, against his estate, by his former wife. It further appears from the record in this case that the gift was delayed, first because the stock which was to be the subject matter of the gift was pledged as collateral security and later because of the absence of Elmer E. Apt in the military service.

The question as to whether the gift was subject to such condition or conditions that Elmer E. Apt did, notwithstanding the formal transfer, retain and exercise control over the subject matter of the gift was the subject of extended discussion in the briefs and arguments of the parties in the present case. The fact that under the articles of partnership Elmer E. Apt was to be the managing partner does not in and of itself sustain the claim of the defendant Collector that Elmer E. Apt remained in control of the subject matter of the gift. The defendant Collector claims that the record in this case establishes that at the time of the transfer in question Melva R. Apt was under a binding obligation to Elmer E. Apt to vote her stock in favor of dissolution and to contribute the corporate assets she received upon dissolution to the subsequent partnership and that by virtue of such obligation Elmer E. Apt retained and exercised such control over the subject matter of the gift as to render

it invalid for federal income tax purposes. As heretofore noted, there is apparent authority for the view that control of such nature that it amounts to a condition will invalidate a gift for federal income tax purposes. However, before such rule would be applicable in the present case it would first be necessary to find that there was an obligation or condition of the character claimed by the defendant Collector to have existed. It may be noted in this connection that the defendant Collector was faced with some difficulty on the matter of proof as to this phase because the facts in connection therewith were peculiarly within the knowledge of witnesses testifying on behalf of the plaintiff. It appears that prior to and at the time of the transfer in question both Elmer E. Apt and Melva R. Apt understood that the corporation would be dissolved and a partnership be formed and that they did carry out such intention. While there appeared to be little likelihood that Melva R. Apt would vote against dissolution of the corporation and would not contribute the corporate assets she received upon dissolution to the subsequent partnership, yet it is the view of the Court that the evidence is not such as to support a finding that she was legally obligated to do so.

It is the view of the Court that under the authorities and the record in this case the gift of the stock in question from Elmer E. Apt to Melva R. Apt fulfills requirements (3), (4) and (5) of a valid gift, set out above.

While in many instances a finding that a gift meets all of the requirements noted above is determinative of the tax consequences under the Federal Internal Revenue Acts, that does not necessarily follow in all cases. In a number of situations there is involved the further question as to the nature and character of the gift, i. e., whether it is a gift of capital or a gift of income. A well-known case illustrating this point is Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, involving a gift of interest coupons. In the present case the parties are not in controversy as to that portion of the corporate assets received by

Elmer E. Apt and Melva R. Apt upon the dissolution of the corporation which represented a return of original invested capital. The controversy between them concerns that portion of the corporate assets received by Elmer E. Apt and Melva R. Apt upon the dissolution of the corporation which represented the gain on the original investment. The defendant Collector contends that such portion received by Melva R. Apt constituted a gift of income or a gift of a distribution in liquidation rather than a gift of stock. On this phase of the case there was considerable discussion in the briefs and arguments as to the matter of when the gain was severed from the investment. In terms of the metaphysical analogy of the fruit and the tree the defendant Collector contended that at the time of the gift in question, although as a matter of legal technicality the fruit had not been severed from the tree, yet as a matter of economic reality such severance had already occurred for federal income tax purposes. It is the contention of the plaintiff that in a situation such as is presented in this case there can be no severance of the gain from the investment until either the corporation has been formally dissolved or the first legal step toward corporate dissolution has been taken. It would seem that a vote to dissolve a corporation constitues such a legal step as to effect a severance of the gain from the investment for federal income tax purposes. Cook v. Commissioner, 1945, 5 T.C. 908. It is also possible that in a situation where for all practical purposes corporate stock had no further purposes to fulfill except to receive the corporate assets upon dissolution and the actual dissolution was a mere formality, it could be considered that a severance had taken place without a formal vote of dissolution. In such a situation it would seem that the gift might well be questioned on the ground of an absence of good faith. In the present case the stock which was the subject matter of the gift still had a purpose to serve other than to receive the corporate assets upon dissolution since the corporation was to actively carry on its operations to the end of the quarterly accounting period on Sep-

tember 30, 1944. The intent to dissolve a corporation at a future time and the preparation of papers to carry out that intent, which was the situation in the present case, would not of itself be such a step as to work a severance of the gain from the investment and would not constitute a taxable event for federal income tax purposes. therefore at the time of the gift in question in the present case there had been no severance of the gain from the investment for federal income tax purposes.

It is the view of the Court that under the authorities and under the record in this case the gift in the present case constituted a gift of stock and not a gift of income or of a distribution in liquidation.

It is the holding of the Court that the plaintiff recover the sum of $1,547.46, with interest and costs as provided by law and judgment will be entered accordingly.